IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEIDRA M. ROPER a/k/a "Spinderella", and
SPINDERELLA ENTERTAINMENT, LLC

    Plaintiffs,

v.

CHERYL JAMES-WRAY A/K/A CHERYL JAMES,
SANDRA DENTON, JAMES MAYNES, AND
S & C PRODUCTIONS, INC.

    Defendants.

**Civil Action No.**

## VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND DECLARATORY JUDGMENT

COME NOW Plaintiffs, Deidra Muriel Roper a/k/a "Spinderella" and Spinderella Entertainment, LLC ("Plaintiffs"), by and through their Counsel, Paul K. Stafford of Thompson Knight LLP, and file this their Verified Original Complaint and Application for Temporary Restraining Order and Declaratory Judgment against the above-named Defendants, Cheryl James-Wray a/k/a Cheryl James, Sandra Denton, James Maynes, and  S&C Productions, Inc. (collectively, the "Defendants"), and allege as follows:

### I.    THE PARTIES

1.      Plaintiff **Deidra Muriel Roper a/k/a "Spinderella"** ("Roper", "Spinderella", "DJ Spinderella", or "Spin"), is a resident of the State of Texas, who currently resides in Dallas County.

2.      Plaintiff **Spinderella Entertainment, LLC** ("Spinderella Entertainment") is a limited liability company managed by Deidra Roper, organized under the laws of the State of Texas, and based in Dallas County.

3.      Defendant **Cheryl James-Wray** a/k/a Cheryl James ("James", a/k/a "Salt") upon information and belief, is a resident of the State of New York, who resides in the City of Melville, and County of Suffolk. This Defendant may be served with process at 33 Mary Court, Melville, NY 11747 or wherever else she may be found.

4.      Defendant **Sandra Denton,** ("Denton", a/k/a "Pepa") upon information and belief, is a resident of the State of Nevada, who resides in the City of Las Vegas, and County of Clark. This Defendant may be served with process at 2700 S. Las Vegas Boulevard, Las Vegas, NV 76108 or wherever else she may be found.

5.      Defendant **James Maynes**, ("Maynes" a/k/a "Jimmy Maynes") upon information and belief is a resident of the State of New York, who resides in the City of White Plains, and County of Westchester. This Defendant may be served with process at 151 Fenimore Rd, Mamaroneck, NY 10543-3538, or wherever else he may be found.

6.      Defendant **S & C Productions, Inc.** ("S&C Productions")**,** on information and belief, is a corporation doing business in the State of New York, in the City of Rockville Centre, and County of Nassau. This Defendant may be served with process through its officer Craig Northacker at 55 Maple Avenue, Rockville Centre, New York 11570.

## II.   NATURE OF THIS ACTION

7.      This is an action for injunctive relief and damages (including exemplary damages, attorneys' fees and costs), for the willful and repeated violations by various Defendants of Plaintiffs' rights under federal law, including the United States Trademark Act of 1946, as amended, 15 U.S.C. §1051 et seq. (the "Lanham Act"), the United States Copyright Act of 1976, as amended 17 U.S.C. 101 et seq. and inclusive of 17 U.S.C. §114 (g)(2)(D), and numerous violations of Plaintiffs' legal rights committed by various Defendants arising under the laws of the State of Texas, including multiple breaches of contract, fraud and intentional misrepresentation,

misappropriation of Plaintiff Roper's identity and income, civil conspiracy, breach of fiduciary obligation, tortious interference with Plaintiffs' existing and prospective business relations, promissory estoppel, unfair competition and unjust enrichment.

### III.  JURISDICTION & VENUE

8.       Subject matter jurisdiction lies within this Court under 28 U.S.C. §1338(a) and 15 U.S.C. §1121, based upon Plaintiffs' claims arising under the Trademark Act of 1946, as amended, and under 28 U.S.C. §1332 based upon diversity of citizenship of the parties. Under 28 U.S.C. §1367, this Court also has supplemental jurisdiction over Plaintiffs' asserted claims that arise under state law because such claims are integrally related to Plaintiffs' federal claims and arise from a common nucleus of operative facts.

9.       Venue is proper in this Court under 28 U.S.C. §1391(b)(2) for the following reasons: (a) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the State of Texas, and (b) Defendants have committed substantial acts of infringement in the State of Texas and throughout the United States via internet, (inclusive of Texas), thereby making the Defendants subject to the personal jurisdiction of the Court.

### IV.   BACKGROUND FACTS COMMON TO ALL COUNTS

**A.  Plaintiffs' Primary Activities In the Entertainment Industry**

10.      Plaintiffs are primarily in the business of providing live and recorded musical performances to the public in the music and entertainment industry under the mark and brand, "DJ Spinderella", "Spinderella" and "Spin". Plaintiff Roper has also been engaged in the provision of professional services as a radio show host, and as an entrepreneur who has marketed her celebrity musical and entertainment services and merchandise bearing the mark, viz. "Spinderella".

**B. Plaintiff Roper's Initial Entry Into The Salt N Pepa Group**

11.     On information and belief, during the mid-1980s, the recording and performing group known as "Salt N Pepa" ("SNP") was originally conceived and formed by its original producer, Herby "Luvbug" Azor, who sought to market an all-female hip-hop group patterned after the then legendary all-male rap group professionally known as "Run DMC".

12.     In the spring of 1987, at the age of 16, while still in high school, Roper auditioned for membership in the up-and-coming SNP group based in New York City.

13.     Roper was accepted into the SNP group and she replaced the group's prior music disc jockey ("deejay" or "DJ").

**C. Spinderella's Ascent to Stardom with SNP**

14.     After acceptance into the SNP group, Plaintiff Roper began performing and touring extensively throughout the United States with Defendants James and Denton in an all-female hip-hop and rap trio. The group's popularity grew rapidly and ushered the female trio into the mainstream of American pop music and culture.

15.     As Roper performed on the group's hit recordings and rendered live performances at major music venues, she was projected through the media and to the world as a principal member of SNP along with the other two members of the SNP group, namely, Defendants James ("Salt") and Denton ("Pepa").

16.     Roper, as "DJ Spinderella", was routinely featured and spotlighted in a special segment of each SNP live show during which she generated significant on-stage excitement and delighted audiences with her captivating musical grooves and remarkable deejay tricks.

17.     On-stage feats such as Roper's were previously only provided to hip-hop audiences primarily by top male deejays. Roper, as DJ Spinderella, hyped audiences into frenzy after which

she routinely brought Defendants James and Denton back into the SNP show following her spotlighted solo performances.

18.     Roper's tenure in the SNP group continued with her performances on historic gold and platinum audio-recordings and in captivating music videos, as well as in modeling popular, iconic SNP clothing and merchandise which was sold at the group's live shows and on the internet, and widely displayed in SNP publicity materials and entertainment-oriented publications.

19.     As Roper explained during a recent BET television show, "When I came on board, we flourished".

20.     During SNP's ascent to stardom - from the late 1980s through the late 1990s - Roper participated in the recording of the group's famous audio recordings with her vocal performances on hit singles such as "Whatta Man", as well as "Let's Talk About Sex", which Roper originally recorded in a recording studio with Defendant James as the other SNP vocalist on the initial recording.

**D.  SNP's Exploitation of Plaintiff Roper's Identity As A Member of Salt N Pepa**

21.     Throughout the group's ascent to the pinnacle of the music world, Roper's photographic image and professional name and mark ("Spinderella") was featured prominently and extensively along with Defendants James and Denton—throughout the media (on a multitude of SNP advertisements, publicity materials, and internet posts), on the numerous record covers, and on iconic popular SNP merchandise.

22.     To the adoring public, Plaintiff Roper as DJ Spinderella became synonymous with, and inseparable from, Salt N Pepa's public identity as she helped boost the all-female SNP trio and brand to legendary iconic status and worldwide fame.

23.     Numerous music awards were bestowed upon Salt N Pepa, including a prestigious Grammy Award in 1995, BET Icon Award, BET Hip-Hop Awards, MTV Music Awards and enshrinement into the African American Museum in Washington DC.

24.     The adulation and patronage of longstanding fans of the legendary SNP trio (with Spinderella) has continued through the present.

**E.   SNP Hiatus and Independent Activity**

25.     In the late 1990s, after the release of the group's album entitled "*Brand New*", SNP completed a final tour and went on hiatus thereafter.

26.     During the SNP hiatus period, Roper moved from New York to California and produced a popular syndicated radio show, originally known as the "Spin Cycle", which featured 'old school' music. The show was later re-branded as "The Backspin", featuring Spin and another deejay, airing in numerous media markets throughout the United States.

27.     Roper voluntarily elected to regularly include and play the music of SNP on her radio broadcasts in the interest of keeping the famous SNP trio's music and legacy alive.

28.     Roper later established her new home in Texas and became involved in music and entertainment activities in Texas, with numerous celebrity appearances, and performances on radio and at live performance venues.

**F.   Defendants' Failure to Pay Plaintiff Roper for the "Best of Salt N Pepa" Album**

29.     On information and belief, in the early 2000s and unbeknownst to Roper, a new SNP compilation album, entitled, "The Best of Salt N Pepa", ("Best of SNP") was released in Europe consisting of remixed prior hit recordings of SNP.

30.     Roper's photographic image was featured prominently in the center of the front cover of the "Best of SNP" album recording, but she did not receive any notification from the Defendants of the record's existence, of any agreement with SNP pertaining thereto, or any

payment, compensation or royalties whatsoever for the use of Roper's identity and performances on such recording.

31.     On information and belief, in early 2001, Roper was suddenly informed—in an unexpected telephone call from Defendant Denton—that Defendants James and Denton were holding the sum of $125,000.00 that would be paid to Plaintiff Roper.

32.     No such payment of $125,000 was subsequently made to Roper.

33.     To date, no such payment has been made to Roper by any of the Defendants.

**G. Reunion Discussions and The VH1 Show**

34.     By the early 2000s, the Defendants discussed with Roper a SNP reunion which would have possibly involved, among other things, a television show based on the legendary female group's rise to stardom.

35.     During these discussions, Defendants James and Denton also assured Roper that she would receive a one-third share of SNP future income and earnings.

36.     Ultimately, in the early 2000s, on information and belief, the Defendants James and Denton ostensibly consummated a television show agreement with VH-1 without prior notification or involvement of Plaintiff Roper in the negotiated contract.

37.     Shortly thereafter, a television show, known as "The Salt N Pepa Show" was aired with numerous episodes featuring only Defendants James and Denton. Plaintiff Roper was invited to appear—only as a guest—on several episodes of the Salt N Pepa television show for minimal compensation.

38.     Roper surmised that she had been duped by Defendants James and Denton, and thereafter elected to refrain from regular involvement and activities with said Defendants due to their failure to honor and fulfill their assurances to Roper of payment of an equal share of SNP

income and earnings to her and inclusion in the VH-1 show as a principal along with Defendants James and Denton.

### H.  SNP Reunion for the Geico Commercial

39.     In 2014, Plaintiff Roper performed with Defendants James and Denton as the famous SNP trio in a televised Geico commercial and advertisement, (the "Geico commercial").

40.     On information and belief, Plaintiff Roper received an equal share of the SNP income and earnings from the Geico commercial. Roper's share of SNP compensation for the Geico commercial was paid directly to Roper from Geico. Geico also directly engaged Roper separately under contract for her services in the Geico commercial.

### I.  "I Love 90s Tour" and Meet-and-Greet Income Allocations

41.     In 2015, Roper performed with Defendants James and Denton in live nostalgia-oriented shows that eventually expanded into a national and international tour from 2016 through 2018, designated as the "I Love The 90s Tour" (the "90s Tour").

42.     During the 90s Tour, Roper asked Defendant James whether fees were being paid to SNP for the trio's continuing appearances at so-called 'meet-and-greet' sessions with fans and show attendees. Roper was told by Defendant James that she would look into the matter.

43.     James later told Roper that SNP was being paid for the meet-and-greet appearances of the SNP trio during the 90s Tour, and that the income would be divided equally with Roper.

44.     Roper never received any documentation from the Defendants or any third parties as to the total sums received by Defendants for the numerous meet-and-greet sessions which were provided by the SNP trio (including Roper) during the 90s Tour; and thus Roper has been unable to confirm that she actually received an equal one-third (1/3) share of all of the 'meet-and-greet' income collected by or on behalf of the SNP trio during the 90s Tour.

### J.  SNP Performance at the 2018 Billboard Awards

45.      In the spring of 2018, the legendary SNP trio (including Roper as Spinderella) set the entertainment world abuzz and drew renewed acclaim for SNP on social media and elsewhere after the trio provided a spirited medley performance of SNP hits at the 2018 Billboard Music Awards. SNP's live performances included a rendition of their hit song, "Whatta Man" with En Vogue.

46.      Plaintiff Roper received no compensation for her performances at the Billboard event.

### K.  BET Ladies Night TV Show

47.      In 2018, BET contracted separately for the services of Roper for inclusion in a reality television show entitled, "Ladies Night", featuring the all-female groups of Salt' N Pepa and SWV.

48.      On information and belief, Roper received an equal one third (1/3) share of total compensation paid by BET to SNP. Roper's share was paid directly by BET under a contract between BET and Roper.

49.      Roper typically could only confirm receipt of a one-third share of SNP income in those instances where a third party who engaged SNP, (such as GEICO or BET), required a separate contract with each individual member of the SNP trio and made direct payment to Roper of an equal one-third (1/3) share of the group's total compensation.

### L.  SNP's Las Vegas Residency Shows, Late Payments to Spinderella, and Deferred Compensation Arrangement

50.      Roper agreed with Defendants to render live performances with SNP - commencing in the Fall of 2018 through the Spring of 2019 - for a specified per show fee for the numerous shows rendered by the SNP trio during each week as part of SNP's residency engagement at Caesar's Paris Hotel in Las Vegas, Nevada (the "Vegas Residency Shows").

51.     Roper was to receive specified flat-fee payments from Defendants through S & C Productions, Inc.; however, such payments were not paid on a regular and timely basis to Roper. Although the Vegas Residency Show rehearsals and performances began in October of 2018, Roper received no payment from the Defendants for her participation in the Vegas Residency Shows during October and November of 2018.

52.     In December of 2018, the Defendants requested that Roper take a so-called 'short' on her pay and accept a lesser amount than was previously agreed upon.

53.     Roper refused to accept such reduced pay as initially requested by the Defendants. Instead, Roper agreed to defer fifty percent (50%) of her past due compensation for the Vegas Residency Shows in return for which the Defendants agreed to pay a higher per-show fee to Roper for the upcoming national reunion tour of New Kids On The Block ("NKOTB"), designated as the Mix Tape Tour (the "Mix Tape Tour") which was scheduled to commence in May of 2019 (the "Deferred Compensation Arrangement").

**M.  Termination Notice and Exclusion of Plaintiff Roper from SNP Activities in 2019**

54.     On January 4, 2019, within days after Roper accepted the Deferred Compensation Arrangement with the Defendants, Roper received a written notice of termination from legal counsel for S & C Productions, Inc., by email, which therein purported to completely terminate Roper's services with SNP, following Roper's "last performance with Salt N Pepa on December 3, 2018", (the "Termination Notice").

55.     After the issuance of the Termination Notice by S & C Productions, Inc., and without further explanation, Defendants James, Denton and S & C Productions, Inc. excluded Roper from all 2019 live performance activities of SNP without pay.

56.     Prior to Roper's receipt of the Termination Notice from S & C Productions Inc., Roper had fully participated in extensive national publicity and marketing activities for SNP's Las Vegas Residency Shows and in support of the historic 2019 NKOTB Mix Tape Tour.

57.     The SNP media advertising and publicity activities notably included photo sessions and a live appearance by the famous SNP trio (with Roper) on the NBC "Today Show" with the members of New Kids On The Block.

58.     Throughout the United States and internationally, millions of fans of New Kids On The Block and SNP became aware of the famous SNP trio's scheduled participation (inclusive of Roper) in the Mix Tape Tour, and substantial ticket sales for the Mix Tape Tour occurred both before and after the Defendants issued the Termination Notice to Roper in January of 2019.

**N.  Defendants' Continuing Wrongful Conduct After The Termination Notice**

59.     After the Defendants' Termination Notice to Plaintiff Roper in January of 2019 and their subsequent exclusion of Roper from all activities and events pertaining to SNP, Defendants and their business affiliates and licensees failed to effectively notify the public of their exclusion of Spinderella from all SNP performances in 2019 and beyond including, inter alia, the Mix Tape Tour.

60.     After issuance of the Termination Notice, the Defendants also failed to discontinue exploiting and capitalizing on Roper's persona and identity in connection with SNP's ongoing activities, well after January 4, 2019 when the Termination Notice was issued to Roper, and despite Roper's subsequent issuance of a Cease and Desist demand notice to Defendants to discontinue the unauthorized use of her persona and identity, brand, and trademark.

61.     After the Defendants' Termination Notice to Roper from S & C Productions, Inc., the Defendants continued to commercially exploit the identity, persona, and brand of Roper without her permission or any compensation therefor, resulting in a massive public hoax and

scam - that included SNP shows in the Cayman Islands through Indio, California in February of 2019. The Defendants' fraudulent activity has continued throughout 2019 to the present, and throughout the currently ongoing nationwide Mix-Tape Tour.

### O. Plaintiff Roper's Repeated Public Notification to Fans

62.     When Roper became aware that her identity was still being exploited by or on behalf of Defendants without her permission or inclusion, Roper began to notify fans on her public Instagram site of Roper's non-participation and non-involvement in such shows.

63.     After two (2) separate notifications to the fans on her Instagram site in February 2019 regarding her non-participation in SNP shows in the Cayman Islands and Indio, California, Roper expanded her notification to the public on May 2, 2019 prior to the NKOTB Mix Tape Tour ("Roper's May 2nd Public Notification").

64.     Roper's May 2nd Public Notification was widely reprinted and displayed - initially throughout social media sites on the internet and subsequently through mainstream media news stories.

65.     The public and fan response to Roper's May 2nd Public Notification and reference to her Termination Notice and exclusion from SNP was overwhelmingly supportive and sympathetic to Roper, and largely critical and disapproving of Defendant James' and Denton's termination and exclusion of Roper from the famous SNP trio.

66.     SNP fans also expressed displeasure with the Defendants' continuing and misleading exploitation of Roper in SNP advertisements and their failure to notify fans of their termination of Roper.

67.     After Roper's May 2nd Public Notification, the Defendants and their affiliates involved in the presentation of the Mix Tape Tour nevertheless continuously failed to publicly

confirm the termination of Roper from SNP and Roper's exclusion from the SNP 2019 activities, including the Mix Tape Tour.

**P. Defendants' Failure To Inform Public of Their Termination of Roper**

68.     To date, on information and belief, the Defendants and their affiliates have continuously failed to notify SNP fans and the public of their (a) termination of Roper in January of 2019; (b) their presently ongoing wrongful and fraudulent exploitation of Roper's identity and persona in connection with the Mix Tape Tour; and (c) the acts and omissions with effectively promote the perpetuation of the public myth that Spinderella is currently a member of the iconic SNP trio in 2019.

69.     As a result of Defendants' failure to notify the SNP fans and public of Roper's non-involvement in the 2019 live performances of Defendants James and Denton, Roper has received notification from fans who were apparently deceived by the Defendants' aforementioned conduct and have inquired about refunds for live shows that were attended where Defendants James and Denton performed without Roper.

70.     Roper has also recently received a photo of fans who noted that they were allegedly posing with Spinderella at a Mix Tape Show venue, when in reality the posted picture is not Roper, but rather a substitute female deejay, who on information and belief, has been engaged by the Defendants for the Mix Tape Tour to create the illusion that Defendants were performing as the legendary SNP trio with Spinderella.

**Q. Defendants' Concealment of Lifetime Miniseries Television Project**

71.     On information and belief, at or near the time of the Defendants' issuance of the Termination Notice to Roper, Defendants had engaged in negotiations which were undisclosed to Roper and culminated in an agreement with Lifetime Television/A&E Networks for the launching of a television miniseries pertaining to SNP, (the "SNP Television Miniseries").

72.     By the spring of 2019, numerous public announcements were made throughout the media regarding the consummation of new SNP Television Miniseries.

73.     To date, the Defendants have concealed all SNP business negotiations, Withheld documentation, and withheld any compensation from Roper pertaining to the SNP Television Miniseries.

**R. Defendants' Hindering of Roper's Pending Vegas DJ Residency**

74.     In October 2018, Plaintiff Roper became aware of a historic deejay residency proposal ("DJ Residency") involving Roper providing celebrity deejay services at the same site where the SNP Vegas Residency was staged.

75.     Notwithstanding Roper's requests to Defendants to provide all pertinent information pertaining to the pending DJ Residency to Roper and her personal manager in order to consummate the pending DJ Residency, the Defendants, without explanation or justification, withheld and concealed from Roper pertinent information regarding the DJ Residency which ultimately led to Roper's loss of the professional work and loss of the income opportunity to accept and participate in the DJ Residency at the Paris Hotel.

**S. Defendants' Collection and Retention of All SNP SoundExchange Income**

76.     In 2019, when Roper joined SoundExchange and attempted to collect royalty Income as a member of the famous SNP trio featured on numerous digital recordings, Roper was informed that Defendants James and Denton had previously claimed all of the SNP SoundExchange royalty income which totaled more than six hundred thousand Dollars ($600,000.00).

77.     Prior to Roper's discovery regarding the aforementioned SNP SoundExchange royalties, none of the Defendants advised Roper of their collection and retention of all SNP SoundExchange royalties over an approximate ten (10) year period.

78.    The Defendants failed to make any payment or share with Roper any financial distribution whatsoever of SNP SoundExchange royalty income to Roper.

## V.    CLAIMS

**COUNT 1:    INFRINGEMENT OF REGISTERED TRADEMARK & SERVICE MARK [15 U.S.C. § 1114 (a) and 115 U.S.C. §117 (a)]**

79.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

80.    Plaintiff Spinderella Entertainment, LLC is the sole owner of the mark "SPINDERELLA" which was filed by Plaintiff Roper's company, viz. Spinderella Entertainment, LLC, and registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"), (Reg. No. 5164095).

81.    Pursuant to 15 U.S.C. §1057(b) Plaintiff's federal registration serves as prima facie evidence of the validity of the registered mark, of Plaintiff's ownership of the mark, and of Plaintiff's exclusive right to use the registered mark in commerce in connection with the goods and services specified in its registration. 15 U.S.C. § 1057(b).

82.    Roper has continued to use and advertise the mark "SPINDERELLA" in commerce both nationally and internationally - primarily in connection with her live celebrity performances and appearances as a recording and performing artist, broadcast media personality, and entertainer.

83.    Roper has attained, and continues to maintain, millions of fans throughout the United States and internationally who know and recognize Roper as "SPINDERELLA".

84.    Notwithstanding Roper's sole ownership of her professional name and pictorial identity, Defendants have continued to cause Roper's name (legal and/or professional), image, persona and/or identity to be falsely projected to the public in advertising shows in which

Defendants James and Denton performed without Roper and with only an unknown substitute deejay.

85.    Defendants have repeatedly and willfully violated, and continue to violate Roper's exclusive rights to her aforesaid federally registered trademark through their continuous and unlawful public use and exploitation of the mark, "SPINDERELLA", without any authorization whatsoever from Roper.

86.    Defendants' unauthorized use of Plaintiff's mark in connection with similar goods and services has caused and is likely to cause customers to be confused as to the origin of the goods and services or to be misled into believing the parties are associated, affiliated or sponsored or endorsed by the other, all in violation of Plaintiff's federal trademark rights and in violation of 15 U.S.C. § 1114.

87.    Plaintiffs seek judicial relief including an injunction and a full recovery, as specifically set forth below for damages, losses and injury caused to Plaintiffs by Defendants' above-described unlawful conduct.

**COUNT 2:     FALSE DESIGNATION OF ORIGIN [15 U.S.C.  §1125(a)]**
        (Continuing Wrongful Use of Plaintiff's Name and Iconic Image)

88.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

89.    Defendants have made extensive, unauthorized commercial use of the SPINDERELLA mark and iconic photographic images of Plaintiff Roper - in advertisements and publicity after Defendants' issuance of the purported Termination Notice to Plaintiff Roper on January 4, 2019.

90.    Throughout 2019, the Defendants have continued to advertise and market the Defendants' duo of James and Denton, along with an unknown substitute performer for Roper,

as the famous SNP trio with Spinderella, even though Defendants have willfully excluded Roper

from SNP since early January of 2019.

91.     In doing so, the Defendants have willfully and repeatedly projected and

disseminated to the public a false designation of origin and an intentionally false and deceptive

description of the professional music services actually presented to the public after January 4,

2019, in violation of 15 U.S.C. § 1125(a).

92.     Defendants' intentional, unlawful, and unauthorized use of the SPINDERELLA mark

is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of

Defendants' services and therefore constitutes false representations in commerce in violation of

15 U.S.C. § 1125(a)(1)(A).

93.     Plaintiffs seek judicial relief including an injunction and a full recovery, as

specifically set forth below, for damages, losses, and injury caused to Plaintiffs by Defendants'

above-described unlawful conduct.

**COUNT 3:     TRADEMARK DILUTION [15 U.S.C. § 1125(c)]**

94.     Plaintiffs assert and fully incorporate by this reference all of the allegations of the

preceding paragraphs of this Complaint as if fully set forth herein.

95.     Plaintiffs' mark, "SPINDERELLA" has become a famous mark and is known by

millions of SNP fans and the public at large throughout the United States and in major international

music markets.

96.     Plaintiffs' SPINDERELLA mark was famous prior to Defendants' unauthorized use

of the mark.

97.     The acts of Defendants as alleged herein, including the unauthorized commercial

use and exploitation of Plaintiffs' mark as described above, have, and continue to cause and result

in the wrongful, undue dilution of the distinctiveness of Plaintiffs' said mark.

98.     The Defendants' above-described unlawful conduct has lessened the capacity of such mark to exclusively identify and distinguish Roper and her professional services and merchandise, as well as to distinguish the mark from the Defendants' unauthorized use and exploitation of the mark in the fields of music, entertainment, and related fields.

99.     Plaintiffs seek judicial relief and a full recovery, as specifically set forth below, for damages, losses, and injury caused to Plaintiffs by Defendants' above-described unlawful conduct.

**COUNT 4:     VIOLATION OF FEATURED PERFORMER RIGHTS**
**              [US COPYRIGHT ACT - 17 U.S.C. §114 (g)(2)(D)]**

100.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

101.    Roper has performed on numerous SNP audio and audio-visual recordings, including "Whatta Man" and "Let's Talk About Sex", as a member of the legendary SNP group.

102.    As a result of Roper's extensive recording activities with SNP, Roper was entitled to an equitable share of the featured performer digital royalties collected by SoundExchange as authorized under federal law.

103.    In 2018, after Roper submitted her SoundExchange membership application and attempted to collect her share of SNP performer royalties; however, she was informed that Defendants James and Denton already claimed one hundred percent (100%) of the SNP royalties at SoundExchange, i.e., fifty percent (50%) for Defendant James and fifty percent (50%) for Defendant Denton.

104.    By March of 2019, Plaintiff Roper was informed by SoundExchange that the total of all featured artist royalties paid by SoundExchange to James and Denton exceeded $600,000.00.

105.    Defendants James and Denton failed to inform Roper of their prior collection and retention of one hundred percent (100%) of the SoundExchange royalties payable to the SNP group.

106.    Roper thereafter caused a royalty freeze and hold to be placed on the SNP digital royalty income at SoundExchange pending the fair resolution and her collection of all SoundExchange royalty income due to Roper.

107.    Plaintiffs seek judicial relief and a full recovery, as specifically set forth below, for damages, losses, and injury caused to Plaintiffs by Defendants' above-described unlawful conduct.

**COUNT 5:    BREACH OF CONTRACT**

108.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

109.    In 2018, Roper agreed with Defendants to render multiple live performances per week with SNP for a specified per-performance fee, as part of the Vegas Residency Shows in mid-October of 2018.

110.    Roper also agreed with said Defendants to participate in publicity and advertising activities pertaining to the scheduled Vegas Residency Shows. Defendants James and Denton agreed to pay Roper a fixed flat-fee per show for her live performances as part of the SNP trio's Vegas Residency Shows.

111.    Defendants abruptly and willfully breached the aforesaid agreement by terminating Roper on January 4, 2019 and failing to make any payments promised by the Defendants to Roper as compensation due for the Las Vegas Residency Shows that were scheduled to commence on or about January 17, 2019

112.    Plaintiffs seek judicial relief and a full recovery, as specifically set forth below, for damages, losses, and injury to Plaintiffs caused by Defendants' above-described unlawful conduct.

**COUNT 6:      ANTICIPATORY BREACH OF CONTRACT**

113.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

114.    On or about late December of 2018, Roper agreed with Defendants to perform as the SNP trio, in the spring and summer of 2019, as featured guests on the NKOTB Mix Tape Tour, (the "Mix Tape Tour") for specific compensation.

115.    In December, 2018, after the Defendants and Roper agreed on Roper's compensation for her performances throughout the Mix Tape Tour, the agreement was thereafter confirmed by text communications between Defendant James "Jimmy" Maynes (as the authorized representative to James and Denton) and Roper.

116.    Shortly thereafter, Roper requested a formal written contract regarding her compensation agreement relating specifically to the Mix Tape Tour mutually approved by the parties.

117.    Within days thereafter, on January 4, 2019, Defendants James and Denton caused the Termination Notice to be issued by Defendants' legal counsel purporting to terminate the services of Plaintiff Roper.

118.    Thereafter, Defendants James and Denton excluded Roper from all activities of SNP in 2019 without any further explanation.

119.    In spite of the aforementioned agreement regarding compensation, Defendants James and Denton did not provide any payment or compensation whatsoever to Roper in connection with the NKOTB Mix Tape Tour as previously promised nor for any other promise of engagement of Plaintiff Roper in 2019 by Defendants.

120.    Plaintiffs seek judicial relief and a full recovery for Plaintiffs' damages and losses caused by Defendants' above-described anticipatory breaches of contract.

**COUNT 7:      PROMISSORY ESTOPPEL**

121.     Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

122.     Defendants repeatedly made clear, unambiguous promises to Roper to induce Roper into various business and contractual relationship with Defendants.

123.     Plaintiffs reasonably relied upon inducements, false, and material promises and representations of the Defendants to Plaintiffs' detriment.

124.     Plaintiffs have suffered, and continue to suffer, significant financial damage, losses, and injury as a result of Plaintiffs' detrimental reliance upon the aforesaid false representations of Defendants.

125.     Plaintiffs seek judicial relief and a full recovery, as specifically set forth below for damages, losses and injury caused to Plaintiffs by Defendants' above-described unlawful conduct.

**COUNT 8:      MISAPPROPRIATION OF PLAINTIFF ROPER'S PERSONA AND IDENTITY (PUBLICITY RIGHTS VIOLATION)**

126.     Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

127.     After Defendants' purported termination and subsequent exclusion of Roper from SNP activities in 2019, Defendants wrongfully caused Plaintiff Roper's identity to be continuously used, exploited, and misappropriated in 2019 in connection with their continued marketing of the famous SNP trio, inclusive of Roper as "DJ Spinderella", rather than instituting corrective advertising and thereby properly informing the public of Defendants' transition to the duo of James and Denton performing without Roper and with only an unknown substitute deejay.

128.     Ultimately, Defendants James and Denton have continuously and knowingly acted in concert together, and at times with others, to wrongfully and fraudulently exploit the persona

and identity of Roper to the public as a full-fledged participant in all of the Defendants' commercial

activities in 2019 as the famous SNP trio.

129.    On information and belief, the Defendants are continuing to participate in the

perpetuation of a massive, self-serving public myth, hoax, and scam in their wrongful,

unauthorized misappropriation of Plaintiff Roper's identity to create a false impression of Roper's

continuing involvement in SNP throughout the Mix Tape Tour of 2019.

130.    Plaintiffs seek judicial relief and a full recovery, as specifically set forth below, for

damages, losses and injury caused to Plaintiffs by Defendants' above-described unlawful conduct.

**COUNT 9:    MISAPPROPRIATION OF PLAINTIFF ROPER'S SHARE OF INCOME AND ROYALTIES**

131.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the

preceding paragraphs of this Complaint as if fully set forth herein.

132.    Defendants have caused SNP clothing and merchandise to be advertised,

produced, and marketed, and to feature the famous SNP trio (inclusive of Roper's persona and

identity) clad in iconic, colorful clothing including t-shirts, jackets, and other items of merchandise.

133.    Roper is and has been entitled to one-third (1/3) of the income and revenue derived

from Defendants' sale and marketing of SNP merchandise prior to Roper's purported termination

from SNP.

134.    After the issuance of the Termination Notice to Roper and Roper's issuance of a

Cease and Desist Notice and Demand for an Accounting to Defendants, Defendants presented

Plaintiffs with a one-time accounting and one-time payment of $1,758.04, purportedly covering

Roper's one-third (1/3) share of SNP merchandise income which bore Roper's "name or likeness".

135.    Roper summarily rejected the proposed payment and settlement offered by the

Defendants as a mere token of the actual and full one-third (1/3) share of SNP merchandise income

due to Roper.

136.    Roper is and has been entitled to a one-third (1/3) share of income and revenue derived by Defendants James and Denton from the extensive SNP meet-and-greet activities which Roper participated in particularly during the Mix Tape Tour.

137.    Roper is and has been entitled to a one-third (1/3) share of income and revenue derived by James and Denton from the SNP Miniseries television project with Lifetime.

138.    Roper is and has been entitled to a one-third (1/3) share of income and revenue derived by James and Denton from the Best of SNP compilation album release.

139.    The Defendants have failed to fully and accurately provide an accounting for, and payment to Plaintiff Roper, of her share of the income and royalties realized and received by Defendants from SNP merchandise sales, the commercial marketing of the Best of SNP compilation album, SNP SoundExchange royalties, and SNP earnings from all SNP meet-and-greet and so-called 'after-party' receptions.

140.    After the issuance of the Termination Notice to Roper, and Plaintiff Roper's subsequent issuance of a Cease and Desist demand notice to Defendants, the Defendants boldly and blatantly continued the advertising and selling of merchandise featuring the famous SNP trio bearing Roper's persona and identity with neither any authorization, permission, or license from Roper, nor any compensation to Plaintiff Roper.

141.    Plaintiffs seek judicial relief and a full recovery, as specifically set forth below, for damages, losses, and injury caused to Plaintiffs by Defendants' above-described unlawful conduct.

## COUNT 10:  BREACH OF FIDUCIARY DUTY, CONCEALMENT OF PLAINTIFF ROPER'S SHARE OF PARTNERSHIP MERCHANDISE PROPERTY AND INCOME

142.    Plaintiffs assert and fully incorporates by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

143.    Defendants James and Denton owed Roper a fiduciary duty, inclusive of a duty of good faith and loyalty, as a principal member of the SNP's trio in connection with the group's commercial activities and income-producing pursuits.

144.    The Defendants repeatedly and willfully breached their aforesaid obligations to Roper through their nondisclosure, active concealment, and wrongful retention of various sources of SNP income, including merchandise sales and revenue, licensing contracts, commercial engagements and ancillary income as obtained, controlled and coordinated by or through the Defendants without full disclosure and equitable payment to Roper.

145.    On information and belief, the Defendants have continuously concealed and failed to fully and accurately account for and pay to Roper her full one-third (1/3) share of various sources of SNP income and ancillary revenue, including without limitation merchandising income and "meet-and-greet" income received and collected by Defendants, notwithstanding their claims to the contrary.

146.    Even after the issuance of the Termination Notice to Plaintiff Roper, the Defendants have boldly and blatantly continued the pursuit of commercial activities involving the use and exploitation of Roper's identity, persona, recordings, and prior involvement in the SNP trio's commercial and public pursuits, - including SNP shows publicly advertised in 2019 and the sale of merchandise featuring the famous SNP trio bearing Roper's persona and identity - with neither any authorization, permission, or license from Roper, nor any compensation to Roper.

147.    To date, the unauthorized sale, advertising, and marketing of SNP's merchandise and live show advertisements and the upcoming SNP televisions miniseries - bearing the identity and/or images of Roper as a member of SNP - has continued without authorization from, nor proper and full compensation to, Roper.

148.    Plaintiffs seek judicial relief and a full recovery, as specifically set forth below, for damages, losses, and injury caused to Plaintiffs by Defendants' above-described unlawful conduct.

**COUNT 11:    INTENTIONAL MISREPRESENTATION [FRAUD]**

149.    Plaintiffs assert and fully incorporates by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

150.    During the Fall of 2018, Defendants, through James "Jimmy" Maynes, made material, willful representations that Plaintiff Roper would be afforded increased per-performance payment and included on more than fifty (50) live performances with the famous SNP trio on the Mix Tape Tour, a historic NKOTB reunion tour, scheduled to commence in May of 2019, and the 2019 SNP's Vegas Residency Shows which were scheduled to resume in mid-January of 2019.

151.    Defendants James and Denton also informed Roper that SNP merchandising income, 'meet-and-greet' income, and so-called 'after-party' income would be equitably shared with Roper.

152.    Defendant Denton also informed Roper that she had funds in the amount of $125,000.00 payable to Roper, ostensibly from SNP earnings derived from a foreign recording agreement for the release of a compilation of remixed SNP recordings entitled, "The Best of Salt N Pepa".

153.    Plaintiff reasonably relied upon the Defendants' material representations resulting in extensive damages and losses to Roper.

154.    Roper's reliance upon Defendants' false promise of her inclusion in the 2019 Las Vegas Residency Shows and the Mix Tape Tour resulted in and included, without limitation, (a) Roper's declining viable alternate professional work opportunities, (b) discontinuing or minimizing the pursuit of prior independent professional engagements and business opportunities (separate and apart from SNP activities); (c) altering Roper's normal living arrangements in Texas and

establishing a temporary residency in Las Vegas; and (d) providing significant professional time and appearance commitments to media marketing, publicity, and promotional activities in support of SNP's professional activities scheduled for 2019 including the national Mix Tape Tour.

155.    Defendants intentionally failed to fulfill the aforementioned representations made to Plaintiff Roper for Defendants' own wrongful personal gain and unjust enrichment.

156.    Plaintiffs have suffered, and continue to suffer, significant financial damage and reputational injury as a result of Plaintiffs' reliance upon the Defendants' false representations and intentional misconduct for which Plaintiffs seek recovery as specified below.

**COUNT 12:   CIVIL CONSPIRACY**

157.    Plaintiffs assert and fully incorporates by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

158.    Defendants knowingly and willfully conspired and acted in concert and agreement with each other to terminate Roper from the legendary SNP trio, and deprive Plaintiff Roper of various sources of income to SNP (including live performance income), wrongfully exploit Roper's identity and persona, and to conceal and withhold from Roper merchandising income, SoundExchange income, and ancillary SNP revenue including 'meet-and-greet income' and other SNP ancillary revenue through Defendants' r aforementioned  improper concerted acts and omissions.

159.    The Defendants' aforementioned concerted acts and omissions were intended to (a) wrongfully benefit and unjustly enrich the Defendants to the detriment of Roper, and (b) to deceive the public and SNP fans and patrons regarding the Defendants' termination and expulsion of Roper from the famous, legendary SNP trio while Defendants continued their misappropriation of Roper's identity.

160.    Said Defendants' concerted actions and activities proximately causing Roper to suffer substantial financial damage, loss, and reputational injury for which she seeks recovery inclusive of injunctive relief, as specified below.

**COUNT 13:  TORTIOUS INTERFERENCE WITH CURRENT & PROSPECTIVE BUSINESS RELATIONSHIPS**

161.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

162.    In October of 2018, Roper became aware of a reasonable opportunity to enter into a business relationship with independent entertainment professionals involving the establishment of a DJ Residency at the Paris Hotel in Las Vegas, at or near the time of the launching of SNP's Vegas Residency Shows.

163.    The DJ Residency would involve Roper's provision of professional deejay services at post-show receptions held in the Paris Hotel on two nights per week.

164.    Defendants acted with a conscious desire to impede and/or prevent the above described DJ Residency and business relationship from proceeding to fruition.

165.    In January of 2019, after Defendants issued the Termination Notice to Roper, Plaintiff Roper's opportunity to establish a DJ Residency at the Paris Hotel was completely thwarted by the Defendants who hindered and failed to reasonably facilitate Roper's DJ Residency.

166.    The Defendants' above-described tortious conduct substantially interfered with Plaintiff Roper's consummation of business opportunity and said conduct of Defendants violated Roper's right to pursue gainful business opportunities  as a professional deejay.

167.    Defendants' above-described interference with Roper's prospective business relations caused Plaintiffs to suffer significant damage and loss.

168.    Defendants have also continuously engaged in the wrongful use, misappropriation, and exploitation of Roper's identity, trade/service mark, and brand which has deprived Plaintiffs of the right to exclusively market (a) the "SPINDERELLA" mark and brand for Plaintiffs' exclusive benefit, and (b) Roper's services as "Spinderella" to the public and prospective business contractors as previously provided by Roper to third parties without such interference by Defendants.

169.    As a result of the Defendants' tortious fiduciary obligations, Plaintiffs have suffered, and continue to suffer, damages, losses, and injury for which Plaintiffs seek recovery as specified below.

**COUNT 14:  UNFAIR COMPETITION**

170.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

171.    The above-described conduct of the Defendants constitutes unlawful and unjust competition in violation of statutory and common law proscriptions against such conduct.

172.    As a result of such unlawful competition, Plaintiffs have suffered and continue to suffer damages, losses, and injury for which Plaintiffs seek recovery as specified below.

**COUNT 15:  UNJUST ENRICHMENT**

173.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

174.    Defendants have inappropriately reaped, and continue to inappropriately reap, financial benefits by misappropriating Roper's identity and persona by, *inter alia,* falsely advertising and exploiting Roper's identity and past involvement with Defendants James and Denton to mislead the public as to the reality that the James and Denton are now only a rap duo

with an unknown deejay, rather than the famous, Grammy Award-winning SNP trio with Roper as "DJ Spinderella".

175.    As a result of the Defendants' aforementioned unlawful misconduct, the Defendants have been unjustly enriched to the detriment of Plaintiffs, and said Plaintiffs have suffered, and continue to suffer, damages, losses, and injury for which Plaintiffs seek recovery as specified below.

**COUNT 16:  SUIT FOR ACCOUNTING**

176.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

177.    In order to assess the complete amount owing to Plaintiffs, Plaintiffs demand that Defendants provide an accounting to Plaintiffs and turn over, or otherwise make available for inspection, all information in Defendants' possession, custody, or control that directly or indirectly relates directly and indirectly (through contractual and/or business relationships with third parties) to Defendants' performances, merchandise, appearances, media publicity, advertisements and commercial activities as SNP. Such information includes, but is not limited to, contracts, receipts, disbursements, bank statements, income and royalty accountings, account receivables, and all other documents reflecting the financial transactions involving Defendants related to, or for the benefit of, SNP.

**VI.   CONDITIONS PRECEDENT**

178.    To the extend applicable and relevant, all conditions precedent have been satisfied or excused.

**VII. ATTORNEYS' FEES**

179.    Plaintiffs assert and fully incorporate by this reference all of the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

180.    Plaintiffs seek to recover their attorneys' fees and costs to the fullest extent allowed by law, including (without limitation) pursuant to Sections 37.009 and 38.001 pf the Texas Civil Practice & Remedies Code and 15 U.S.C. §§ 505 and 1117.

## VIII.REQUEST FOR DECLARATORY JUDGMENT

181.    Plaintiffs assert and fully incorporate by reference all of the allegations of the preceding paragraphs of this Complaint as if set forth fully herein.

182.    Defendants' acts and omissions have created an actual, justiciable controversy for which a declaratory judgment is proper.

183.    Therefore, under the Declaratory Judgment Act, Plaintiffs requests that this Court issue a judgment declaring that Defendants committed the following acts:

(1) Infringement of Plaintiffs' "SPINDERELLA" trademark and service mark in violation of and pursuant to 15 U.S.C. § 1114 (a) and 115 U.S.C §1117 (a);

(2) False designation of origin through continued wrongful use of Plaintiffs' name and/or photographic image, in violation of 15 U.S.C. § 1125(a);

(3) Trademark dilution, in violation of 15 U.S.C. § 1125(c);

(4) Violation of Featured Performer Rights, pursuant to 17 U.S.C. §114 (g)(2)(D);

(5) Breach of Contract;

(6) Anticipatory Breach of Contract;

(7) Misappropriation of Roper's persona and identity (Publicity Rights Violation);

(8) Misappropriation of Roper's share of income and royalties;

(9) Breach of fiduciary duty, concealment of Plaintiff Roper's share of partnership income and royalties;

(10) Intentional Misrepresentation;

(11) Civil Conspiracy;

(12) Tortuous Interference with Current & Prospective Business Relationships;

(13) Unfair Competition; and

(14) Unjust Enrichment.

## IX.    REQUEST FOR TEMPORARY RESTRAINING ORDER

184.    Plaintiffs assert and fully incorporate by reference all of the allegations of the preceding paragraphs of this Complaint as if set forth fully herein.

185.    Plaintiffs hereby assert that Plaintiff Roper's professional identity and professional services as an internationally renowned musical performer are unique and extraordinary in the music and entertainment field in the State of Texas, throughout the United States, and throughout international music and entertainment markets.

186.    A temporary restraining order is necessary (a) to preserve the status quo and income due to Plaintiffs which has and continues to be collected and received by Defendants; and (b), given the immediate, imminent and irreparable harm to Plaintiff Roper's professional reputation, business relations and professional work opportunities that has ensued and continues to ensue throughout the United States due to Defendants' continuing acts and omissions, specifically the Defendants' continuing, national infringement of Plaintiffs' trademark and service mark, viz. "SPINDERELLA" in violation of 15 U.S.C. § 1114 (a) and 115 U.S.C. § 1117.

187.    There is no adequate remedy at law available to Plaintiffs because the infringement of Plaintiffs' identity, persona, publicity rights and federal service and trademark committed by Defendants continues to cause damage to, tortuously interfere with, and diminish Plaintiffs' intellectual property, professional reputation, and work opportunities.

188.    The precise amount of the damage and loss caused to Plaintiffs by virtue of Defendants' aforementioned violations of Plaintiffs' rights and infringement activity is not readily ascertainable and Plaintiffs are likely to suffer irreparable harm to Plaintiffs' brand, mark,

reputation and favorable perception by the public due to Defendants' unauthorized exploitation thereof and perpetuation of a public scam and hoax regarding SNP's appearances and performances throughout the country without Plaintiff Roper and without Roper's authorized to exploit her identity, likeness and mark in advertising of such deceptive and fraudulent performances of SNP utilizing a 'stand-in' for the famous DJ Spinderella.

189.    The Defendants' continuing, national use and exploitation of a false designation of origin, viz. the iconic image and identity of Plaintiff Roper as "Spinderella" in advertising and in the public presentation of live performances of Defendants' James and Denton as Salt N Pepa without Plaintiff Roper's authorization or involvement is in violation of 15 U.S.C. §1125(a). There is no adequate remedy at law available to Plaintiffs due to Defendants' continuing false designation of origin because the violations of Plaintiff's identity and persona continues to cause financial and reputational harm to Plaintiff Roper and the  damage caused to said Plaintiffs by Defendants' aforementioned unlawful activity is not readily ascertainable and is likely to cause Plaintiffs to suffer irreparable harm.

190.    The Defendants' continuing dilution of Plaintiffs' trademark and service mark, viz. advertising and in the public presentation of live performances of Defendants' James and Denton as Salt N Pepa without Plaintiff Roper as "Spinderella" and with an unannounced female deejay substitute and imposter for Plaintiff Roper is in violation of the applicable laws of the State of Texas.

191.    The Defendants continuing and tortious interference with Plaintiff Roper's current and prospective business relations and professional work opportunities has continuously resulted in Plaintiff Roper being substantially deprived of professional work and income-producing opportunities since Defendants have misled both the public and prospective business relations to

believe that Plaintiff Roper is unavailable to work during the continuing national Mix Tape Tour, from which Roper has been wholly excluded by Defendant.

192.    The financial and reputational damage caused to Plaintiffs by Defendants' aforementioned infringement activity is not readily ascertainable and is likely to cause Plaintiffs to suffer irreparable harm.

193.    Absent immediate injunctive relief, Defendants will continue to engage in acts and omissions causing immediate and irreparable harm to Plaintiffs.

194.    Defendants' acts and omissions constitute unfair competition with Plaintiffs' marketing of professional services as a deejay and celebrity and which have and continue to result in unjust enrichment of the Defendants and damage to Plaintiffs which is not readily ascertainable and likely to cause Plaintiffs to suffer irreparable harm.

195.    Wherefore, Plaintiffs request that this Court issue the following:

   **a.** Temporary Restraining Order, and thereafter, a Temporary Injunction, followed by a Preliminary Injunction, to restrain Defendants:

   **i.** from violation of Plaintiffs' trademark and service mark;

   **ii.** from any and all false designations of origin through the continued wrongful use of Plaintiff Roper's legal and professional name, identity, persona and/or image;

   **iii.** from any and all trademark dilution pertaining to Plaintiffs' mark, viz. "SPINDERELLA";

   **iv.** from violation of Featured Performer Rights;

   **v.** from the misappropriation of Plaintiff Roper's persona and identity;

   **vi.** from the misappropriation of Plaintiffs' share of income and royalties;

vii.  from breach of fiduciary duty and concealment of Plaintiffs' share of partnership merchandise and income;

viii.  from tortuous interference with Plaintiffs' current and prospective business relationships

b.  In addition, Plaintiffs request that the Temporary Restraining Order require Defendants to do the following:

i.  immediately issue to all actual and prospective patrons, SNP ticket buyers, and the public at large reasonable and effective corrective public notifications which are reasonably accessible of the non-participation and non-involvement of Plaintiff Roper, as the famous "Spinderella," in any live performances of SNP since December of 2018.

ii.  provide a full and accurate accounting of any revenue and profits received by Defendants from January 1, 2014 through the present and deposit one-third (1/3) of all such gross revenue and profits into a court-approved constructive trust.

iii.  deposit into said constructive trust, for the sole benefit of Plaintiffs, a minimum of one-third (1/3) of any and all future gross revenue and profits payable by third parties to Defendants or their affiliates for any and all SNP merchandise, live performances, meet-and-greet appearances, after-show party fees, performer and record royalties, and related earnings.

iv.  disgorge and place in said constructive trust any and all revenue, profits and income of any kind or nature derived directly or indirectly by Defendants since December of 2018 from live performances and

appearances; for all merchandising income derived from the misappropriation of Plaintiffs' mark, identity, persona, image, good will, and reputation in connection with Defendants' commercial activities and Plaintiff's Roper's share of partnership royalties income from the sale and exploitation of SNP merchandise, recordings, and all other public and commercial activities from which the defendants have been unjustly enriched to the aforesaid detriment, damage, and loss of Plaintiffs.

**v.** Provide Plaintiffs with a full indemnification from liability which may be otherwise imposed upon Plaintiffs due to Defendant's above-described unlawful conduct.

196.    It is submitted that, in all reasonable probability, Plaintiffs will prevail on the merits in the action underlying its request for damages, an accounting, imposition of a constructive trust, and injunctive relief.

197.    It is further submitted that the granting of the relief requested by Plaintiffs herein is not inconsistent with public policy considerations.

## X.    REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs demands judgment:

1.    On the First, Second and Third Counts**,** for an order from this Court:

a. permanently enjoining Defendants, their agents, employees, licensees, designees and others acting under their direction, authorization, or in concert with them from the following:

    i. engaging in activities which infringe upon Plaintiffs' trademark "SPINDERELLA", and any mark that is confusingly similar thereto, or that is likely to confuse, deceive, or mislead the public

    ii. committing any acts which will tarnish, blur, or dilute, or are likely to tarnish, blur, or dilute the distinctive quality of the "SPINDERELLA" mark; and,

    iii. making any representations, express or implied, that Plaintiff Roper is affiliated with, participates in, sponsors, or approves of Defendants' activities, products, or services;

    iv. directing the Defendants to file with this Court and serve on Plaintiffs within a set period of time not to exceed twenty (20) days from the Order of this Court, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunctive relief imposed by the Court;

b. payment of all losses, damages, and injury to Plaintiffs arising from the Defendants' unlawful infringement activity and violation of applicable laws as cited in Counts 1, 2 and 3, together with the full interest permitted by law and inclusive of Defendant's profits, treble and/or exemplary damages, reasonable attorneys' fees, and the costs and disbursements incurred in this action as permitted by law.

2. As to the Fourth Count of the Complaint, for an Order from this Court:

a. permanently enjoining Defendants, their agents, employees, and others acting under their direction, authorization, or in concert with them from collecting and

misappropriating Plaintiffs' share of   income payable by SoundExchange pursuant to applicable law cited in Count 4;

    b.   requiring the immediate payment by Defendants James and Denton to Plaintiffs of all SoundExchange income due to Plaintiffs heretofore wrongfully misappropriated by Defendants' James and Denton and their affiliates, together with the full interest permitted by law;

    c.   imposing upon the Defendants treble and/or exemplary damages, reasonable attorneys' fees, and the costs and disbursements incurred in this action by Plaintiffs as permitted by law.

3.   As to Fifth and Sixth Counts of the Complaint, for order from this Court awarding Plaintiffs the full measure of damages proximately caused to Plaintiffs through improper and unauthorized usage of her name, persona, and likeness, specifically:

    a.   requiring the immediate payment by Defendants James and Denton to Plaintiffs of one-third (1/3) of all sums received or credited to Defendants' James and Denton and their affiliates from their misappropriation of Plaintiff Roper's identity and image together with the full interest permitted by law;

    b.   requiring, within ten days from the date of the applicable Court Order, the imposition and institution of a constructive trust – which shall be interest-bearing as permitted by law, of all sums collected or received by the Defendants and their affiliates from their commercial activities involving the misappropriation of Plaintiff Roper's identity and image;

    c.   requiring Defendants to make payment to Plaintiffs of treble and/or exemplary damages and the costs and disbursements incurred in this action, including reasonable attorneys' fees as permitted by law;

4. As to Eighth, Ninth, and Tenth Counts of the Complaint, for order from this Court awarding Plaintiffs Roper the full measure of damages proximately caused to Plaintiffs through improper and unauthorized usage of Plaintiffs' persona, image, income (including partnership merchandise property income), and royalties, specifically:

   a. requiring the immediate payment by Defendants James and Denton to Plaintiffs of one-third (1/3) of all sums received or credited to Defendants' James and Denton and their affiliates from their improper and unauthorized usage of Plaintiff Roper's identity and image together with the full interest permitted by law;

   b. requiring, within ten days from the date of the applicable Court Order, the imposition and institution of a constructive trust – which shall be interest-bearing as permitted by law, of all sums collected or received by the Defendants and their affiliates from their commercial activities involving the improper and unauthorized usage of Plaintiff Roper's identity and image;

   c. requiring Defendants to make payment to Plaintiffs of treble and/or exemplary damages and the costs and disbursements incurred in this action, including reasonable attorneys' fees as permitted by law;

5. As to the Seventh, Eleventh, and Twelfth Counts, for an order from this Court:

   a. permanently enjoining Defendants, their agents, employees and others acting in concert) with them from collecting, concealing, and misappropriating, Plaintiff Roper's one-third share of all sums received or credited to Defendants' James and Denton and their affiliates from the sale of SNP merchandise of any kind and nature in the United States, the United Kingdom, and all other foreign territories where such merchandise is sold or marketed on behalf the

Defendants, and the immediate disclosure by Defendants of all documents, contracts, licenses, authorizations, receipts, statements, and any other existing documentation and information (including source payment and manufacturing records) pertaining to the sale of SNP merchandise and revenue collected, concealed, misappropriated, or otherwise received and/or disbursed by or on behalf of Defendants during the past five (5) years to through the present;

b. requiring the immediate imposition and institution of a constructive trust - which shall be interest- bearing as permitted by law, of all sums collected or received by Defendants and their affiliates - both as of the date of the Order and prospectively thereafter from their commercial activities involving the sale of SNP merchandise and collection of all gross proceeds derived therefrom over the past five (5) years to the present;

c. requiring Defendants' payment to Plaintiffs of treble and exemplary damages pertaining to the unpaid one-third share due to Plaintiff Roper from proceeds and income derived by Defendants from the sale and marketing of SNP merchandise over the applicable accounting period;

d. requiring Defendants payment of Plaintiffs' costs and disbursements incurred in this action, including reasonable attorneys' fees as permitted by law;

6. As to the Thirteenth, Fourteenth and Fifteenth Counts, for an order from this Court:

a. permanently enjoining Defendants, their agents, employees, licensees, affiliates, designees and assigns, from individually or collectively in concert with others, interfering with Plaintiff's' prospective economic advantage; unfairly competing and unjustly enriching themselves individually or collectively in whole or in part by exploiting Plaintiffs' intellectual property rights,

SPINDERELLA trademark, identity, persona, name, and likeness, directly or indirectly in marketing the Defendants' services and products in the United States, the United Kingdom, and in all other foreign territories where Defendants James and Denton market their good and services;

b. requiring the immediate disclosure by Defendants of all documents, contracts, licenses, authorizations, receipts, statements, and any other existing documentation and information (including source payment and manufacturing records) pertaining to the Defendants' activities which has or may violate any of Plaintiffs' legal rights as herein enumerated herein;

c. the immediate imposition and institution of a constructive trust – which shall be interest- bearing as permitted by law, of all sums collected or received by Defendants and their affiliates - both as of the date of the Order and prospectively thereafter from their commercial activities involving the sale of SNP merchandise and collection of all gross proceeds derived therefrom over the past five (5) years to the present;

d.  requiring Defendants to make payment of treble and/or exemplary damages pertaining to the unpaid one-third (1/3) share due to Plaintiffs from proceeds and income derived by Defendants from the sale and marketing of SNP merchandise over the applicable accounting period;

e. requiring Defendants to provide an accounting for any financial benefit Defendants received related to Defendants' performances, appearances, media, or advertisement as SNP; and

     f.   requiring Defendants to make payment of Plaintiffs' costs and disbursements incurred in this action, including reasonable attorneys' fees as permitted by law.

DATED: July 10, 2019

Respectfully Submitted,

**THOMPSON & KNIGHT LLP**

_/s/ Paul K. Stafford_
Paul K. Stafford
State Bar No. 00791716
paul.stafford@tklaw.com

Sydne K. Collier
State Bar No. 24089017
sydne.collier@tklaw.com
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:      214-969-1106
Facsimile:      214-999-1500

Attorneys for Plaintiffs

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **VERIFICATION** |
| **COUNTY OF DALLAS** | § | |

I, Deidra M. Roper, the named Plaintiff, am over 18 years of age, of sound mind, and have never been convicted of a felony or crime of moral turpitude in any of the United States. I hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint and Application for Temporary Restraining Order and Declaratory Judgment (the "Verified Complaint") and know the contents thereof, and that the factual statements contained in the Verified Complaint are true to my own knowledge.

I hereby declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Executed on this 28th day of June 2019.

_____
Deidra M. Roper

SUBSCRIBED AND SWORN TO BEFORE ME on this the 28th day of June, 2019.

_____
Notary Public in and for the
State of Texas

My commission expires:
August 03, 2019

JOE MANUEL HERNANDEZ
My Commission Expires
August 3, 2019