IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEIDRA M. ROPER a/k/a "Spinderella", and SPINDERELLA ENTERTAINMENT, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:19-cv-01651-S |
| CHERYL JAMES-WRAY a/k/a CHERLY JAMES, SANDRA DENTON, JAMES MAYNES, AND S & C PRODUCTIONS, INC., | § § § § § | |
| Defendants. | § § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER**

**FOX ROTHSCHILD LLP**

C. Dunham Biles
State Bar No. 24042407
Two Lincoln Centre
5420 LBJ Freeway, Suite 1200
Dallas, Texas 75240
Tel: 972-991-0889
Fax: 972-404-0516
cbiles@foxrothschild.com

**ATTORNEYS FOR SPECIALLY-APPEARING DEFENDANTS[1]**

---

[1] Defendants are specially-appearing in this matter to oppose Plaintiffs' request for a temporary restraining order ("TRO"). Defendants reserve their rights to contest this Court's personal jurisdiction over them in a responsive pleading.

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' REQUEST FOR A TRO**

Specially-Appearing Defendants Cheryl James-Wray a/k/a Cheryl James ("Salt"), Sandra Denton ("Pepa"), James Maynes ("Maynes"), and S & C Productions, Inc. ("S & C") (together, "Salt-N-Pepa") file this Response in Opposition to Plaintiffs' Request for a Temporary Restraining Order ("TRO"), as follows:

## I.
## PRELIMINARY STATEMENT

After decades of friendship, Spinderella[2] has embarked on a smear campaign, and sued her friends, based on blatantly erroneous assertions. The truth, however, is that Salt and Pepa have always tried to do right by Spinderella.

Spinderella decided to quit performing with Salt and Pepa years ago[3] and asked to rejoin the group "Salt N Pepa" in December, 2013. Nostalgia and the desire to help a friend motivated Salt and Pepa to agree. They offered to pay Spinderella on a per show basis to perform with the group. Spinderella, grateful for the opportunity, agreed, and they performed together again. Things unfortunately did not work out and Salt-N-Pepa spent months trying to close open issues—like how they would each refer to their shared history going forward as they each pursued respective careers—in the hope they could part as friends.

Apparently never satisfied, and without any appreciation for all the professional and financial assistance provided by Salt and Pepa, Spinderella demands extraordinary preliminary relief even though all she really wants is money. Nothing is burning, other than any remnants of a now destroyed friendship, and there is simply no reason for this Court to intercede now. Salt-

---

[2] The term "Spinderella" shall refer to Plaintiffs Deidra Roper a/k/a "Spinderella" and Spinderella Entertainment, LLC.

[3] Salt N Pepa continued to tour during Spinderella's leave.

N-Pepa will gladly not make any reference to Spinderella in connection with any promotion and make good faith efforts to cause others to honor the same—as they have done since they asked Spinderella to leave the group.  They expect Spinderella to do the same.

While Spinderella offers a "verified" complaint, allegations are not facts, and the facts are contrary to Spinderella's claims.  Spinderella was never Salt's, Pepa's or S & C's partner. She bore no risk in the group "Salt N Pepa's" success and was always paid in full for her time. Further, Spinderella's allegations that she has not been paid in full for the group "Salt N Pepa's" Las Vegas Residency are pure fantasy.  Additionally, while it may be true that some promoters have mentioned Spinderella while promoting the group "Salt N Pepa," they have done so over Salt-N-Pepa's objection and after being fully informed that Spinderella and Salt-N-Pepa have parted ways.

Spinderella cannot meet the burden imposed upon her by her request for extraordinary relief and she knows it.  This application should be seen for what it is, a publicity stunt.  Whether or not Spinderella's antics have achieved the public spectacle she had hoped for, she now has an application that, when examined under the lens of law, falls woefully short of its mark.  The application should be denied.

## II.
## APPLICABLE LEGAL STANDARDS

The law regarding a request for a temporary restraining order is well settled.  To prevail in her request, Spinderella must demonstrate four elements:

> (1) a *substantial likelihood* of success on the merits; (2) a *substantial threat* that [Spinderella] will suffer *irreparable injury* if the temporary restraining order is denied; (3) that the threatened injury outweighs any damage that the temporary restraining order might cause [Salt-N-Pepa]; and (4) that the temporary restraining

order will not disserve the public interest.[4]

Spinderella's burden is a heavy one: "A temporary restraining order is an *extraordinary remedy* which should not be granted unless the party seeking it has *clearly carried the burden of persuasion on all four elements.*"[5]

Spinderella cannot meet this heavy burden for any of the relief she is requesting.

## III.
## ARGUMENTS AND AUTHORITIES

**A.  Spinderella Cannot Demonstrate A Substantial Threat Of Irreparable Harm.**

Spinderella cannot meet her burden to establish a substantial threat of irreparable harm to justify the requested TRO for at least two reasons: (1) there is no urgency justifying the TRO; and (2) Spinderella has an adequate remedy at law—namely monetary relief.

**1.  There Is No Urgency Justifying Spinderella's TRO.**

A "delay in seeking a preliminary injunction *rebuts* any presumption of irreparable harm."[6] Further, an irreparable injury must be actual and imminent.[7] A movant must specify facts in an affidavit or a verified complaint that clearly show that *immediate* and irreparable injury, loss, or damage will result.[8]

---

[4] Jackson *Women's Health Org. v. Currier,* 760 F.3d 448, 452 (5th Cir. 2014) (emphasis added).

[5] *Whole Woman's Health v. Paxton,* 264 F.Supp.3d 813, 818 (W.D. Tex. 2017) (emphasis added) (citing *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.,* 418 F.3d 535, 545 (5th Cir. 2005)).

[6] *Gonannies, Inc. v. Goupair.Com, Inc.,* 464 F.Supp.2d 603, 609 (N.D. Tex. 2006) (emphasis added).

[7] *See Chacon v. Granata,* 515 F.2d 922, 925 (5th Cir. 1975).

[8] *See* FRCP 65(b)(1)(A) (TRO).

Spinderella's contention that sufficient exigent circumstance exist to justify immediate entry of a TRO is belied by her conduct. For months after an accounting, Plaintiffs threatened to file suit. Rather than file an action and pursue immediate injunctive relief, however, Plaintiffs engaged in bad faith negotiations with Salt-N-Pepa. Since at least February 22, 2019, the parties have been engaged in negotiations to find an amicable resolution to Spinderella being asked to no longer perform with Salt and Pepa.[9] This included Spinderella's newly recognized performer royalty rights under 17 USC § 114 (*i.e.*, SoundExchange rights).[10] Furthermore, Salt-N-Pepa wished to provide Spinderella with a share of "Salt N Pepa's" royalties from merchandising sales for merchandise bearing Spinderella's name and likeness, for shows in which Spinderella participated.[11] Instead of continuing negotiations in good faith, Spinderella engaged a new attorney, and filed this lawsuit.[12] Nonetheless, Salt-N-Pepa paid Spinderella one-third of royalties for Salt N Pepa merchandise sold in 2018 containing Spinderella's name, likeness and/or mark ($1,758.05).[13]

---

[9] *See* Declaration of James Maynes ("Maynes Decl."), ¶ 2, attached to Defendants' Appendix In Support of Their Response in Opposition to Plaintiffs' Request for a Temporary Restraining Order ("App." 002).

[10] *See id*. Salt-N-Pepa understand that Spinderella made a claim to SoundExchange based on Salt N Pepa's entire catalogue and failed to revise her claim to the limited number of songs to which she actually has rights (*e.g.,* she did not perform on Salt N Pepa's entire catalogue). *See* Declaration of Cheryl James P/K/A Salt ("Salt Decl.") ¶ 4 (App. 038).

[11] *See* Maynes Decl. ¶ 2 (App. 002).

[12] *See id.* (App. 002).

[13] *See id.* (App. 002); Spreadsheet of Salt N Pepa Merchandise Sales from 2015 to Q1 of 2019 Containing Spinderella's Name, Likeness and/or Mark, attached as Exhibit A to Maynes Decl. (App. 008-009; Spreadsheet of Salt N Pepa Merchandise Sales from 2018 Containing Spinderella's Name, Likeness, and/or Mark, attached as Exhibit B to Maynes Decl. (App. 011); Receipt of July 15, 2019 Payment from S & C to Spinderella Entertainment, LLC for

Those protracted negotiations and Spinderella's belated, sudden rush to the courthouse demonstrate two things: (1) there is no urgency justifying Spinderella's requested temporary restraining order; and (2) Spinderella's own delay has manufactured the present sense of urgency. Moreover, the MixTape Tour has ended and the I Love the 90s Tour is nearly completed (only one remaining show in October).[14] Those two tours are the basis for Spinderella's trademark and publicity claims and upon which her requested TRO is based. Accordingly, there is no emergency requiring an immediate injunctive relief.

### 2. Spinderella Seeks Monetary Relief.

It is black letter law that harm is irreparable only if there is no adequate remedy at law, such as monetary relief.[15] Here, in connection with every cause of action (except for an accounting)[16] Spinderella seeks full monetary relief.[17] This case is not about any supposed

---

Merchandise Containing Spinderella's Name, Likeness, and/or Mark, attached as Exhibit C to Maynes Decl. (App. 013).

[14] *See* Maynes Decl. ¶ 4 (App. 003-004).

[15] *See*, *e.g.*, *Janvey v. Alguire,* 647 F.3d 585, 600 (5th Cir. 2011); *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 848 (5th Cir. 2004) ("For purposes of injunctive relief, an adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages.").

[16] *See* ECF Doc. 1 ¶¶ 176-77 (An accounting, of course, as Spinderella admits, is merely a method by which she seeks to determine the amount of her purported damages.).

[17] *See*, *e.g.*, ECF Doc. 1 ¶¶ 87, 93, 99, 107, 120, 125, 130, 141, 148, 156, 160, 169, 172, 175. Spinderella's request that certain funds be placed in a constructive trust, is not appropriate. "To obtain a constructive trust, the proponent must prove (1) the breach of a special trust, fiduciary relationship, or actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing to an identifiable res." *Matter of UTSA Apartments 8, LLC,* 886 F.3d 473, 488 (5th Cir. 2018). Spinderella has not, and cannot, demonstrate breach of a fiduciary relationship (*i.e.*, that she was in a partnership) with Salt and Pepa for the reasons stated in Section III.B.2 below. Nor has she proffered any evidence demonstrating Salt-N-Pepa were unjustly enriched in any manner and that it is tied to a specific piece of property. Rather, it is a desperate attempt to hold a third of

irreparable harm. To the contrary, Spinderella wants only one thing—money. Accordingly, injunctive relief is inappropriate,[18] and Spinderella's request for a TRO should be denied.

B. **<u>Spinderella Cannot Show A Substantial Likelihood Of Success On The Merits To Justify A TRO.</u>**

   1. **<u>Spinderella Cannot Show A Substantial Likelihood Of Prevailing On Her Trademark And Right of Publicity Claims.</u>**

Spinderella's accusations of trademark and right of publicity violations in support of her requested TRO are baseless.[19] To succeed on those claims, Spinderella must prove that Salt-N-Pepa "used" Spinderella's name, likeness, and/or mark in a commercial manner.[20]

Simply put, Salt-N-Pepa never used Spinderella's name, likeness, or marks without authorization. Indeed, Spinderella's name, likeness, and mark were only included because of her repeated insistence that they be included on promotional materials.[21] After January 4, 2019, when Spinderella was asked to no longer perform with Salt and Pepa, Salt-N-Pepa immediately ceased using Spinderella's name and likeness or her mark, including on promotional materials

---

Salt-N-Pepa's revenue's hostage as leverage for settlement negotiations. Moreover, the request for a constructive trust demonstrates that what Spinderella really seeks is monetary relief.

[18] *See supra* n. 13.

[19] *See* ECF Doc. 1, ¶¶ 79-99, 126-130, 184-190, 192, 194, 195a.i-iii, 195.a.v-vi, 195a.i.

[20] *See* 15 U.S.C. § 1114(1)(a) (a claim for trademark infringement must involving unauthorized "use in commerce" of the plaintiff's mark); 15 U.S.C. § 1125(a)(1) (a claim for false designation of origin occurs when the defendant "uses in commerce any word, term, name, name, symbol or device" that creates a false designation of origin); 15 U.S.C. § 1125(c)(1) (a claim for trademark dilution involves "use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment"); *Henley v. Dillard Dept. Stores,* 46 F.Supp.2d 587, 590 (N.D. Tex. 1999) (a right of publicity or misappropriation violation involves one who "appropriates for his own use or benefit the name or likeness of another[.]").

[21] *See* Maynes Decl., ¶ 3 (App. 003).

and merchandise.[22] Moreover, the DJ chosen to replace Spinderella was not picked to be a look-a-like of Spinderella—aside from the fact that Spinderella's replacement was a middle-aged African-American woman.[23]

Further, by January 7, 2019, Salt-N-Pepa informed all relevant concert promoters, including Live Nation (who was responsible for The MixTape Tour) and Universal Attractions (who was responsible for the I Love The 90s Tour) that Spinderella was no longer performing with "Salt N Pepa" and to discontinue all use of her name and likeness in connection with promotional materials.[24] Unfortunately, it was those concert promoters who failed to cease using Spinderella's name and likeness *after* Salt-N-Pepa informed them to cease using Spinderella's name and likeness.[25] Despite making their objections known, Salt-N-Pepa had no control over how the concert promoters created and exploited promotional materials.[26]

Furthermore, Salt-N-Pepa have made every attempt to informally resolve these specific issues with Spinderella. Prior to the hearing on Spinderella's requested TRO, Salt-N-Pepa sought to enter into a stipulation whereby Salt-N-Pepa would not use Spinderella's name, likeness, and marks—as they have no need for them— and use good faith efforts to prevent

---

[22] *See id.* (App. 003).

[23] *See id.* (App. 003).

[24] *See* Maynes Decl., ¶ 4 (App. 003-004); E-mail Correspondence From Maynes to Live Nation, dated January 7, 2019, attached as Exhibit D to the Maynes Decl. (App. 015-016); E-mail Correspondence From Maynes to Universal Attractions, dated January 7, 2019, attached as Exhibit E to the Maynes Decl. (App. 018-020); Salt Decl. Exhibits A-b (App. 040-44).

[25] *See* Maynes Decl., ¶ 4 (App. 003-004).

[26] *See id.* It is also worth noting that The MixTape Tour is over. *See id.* Therefore, any use of Spinderella's name, likeness or marks by Live Nation has ceased. *See id.* Further, there is only one more performance left on the I Love The 90s tour in which Salt-N-Pepa are performing. *See id.*

others from doing the same—in exchange for Spinderella agreeing not to use Salt and Pepa's name and likeness or the "Salt N Pepa" mark and make good faith efforts to prevent others from doing the same. Spinderella never responded to Salt-N-Pepa's proposal.

In sum, Spinderella's accusations that Salt-N-Pepa engaged in trademark violations and misappropriated her name, likeness, and marks are patently false because Salt-N-Pepa did not "use" Spinderella's name, likeness, or marks after she was asked to no longer perform with the group on January 4, 2019. Therefore, Spinderella cannot meet her heavy burden to show a substantial likelihood of prevailing on her trademark and right of publicity based claims.

### 2. Spinderella Cannot Show A Substantial Likelihood Of Prevailing On Her Breach Of Fiduciary Duty, Misappropriation Of Royalties, And Accounting Claims.

To support her TRO, Spinderella makes several claims that are predicated on her false contention that she is a full-fledged member (*i.e.*, partner) of the group "Salt N Pepa," including breach of fiduciary duty, misappropriation of royalties, and an accounting—which are essentially claims for a third of all royalties and revenues related to merchandising, performances, and other revenues received by Salt-N-Pepa.[27]

Spinderella is not, and has never been, a partner of the group "Salt N Pepa" and she

---

[27] *See* ECF Doc. 1, ¶¶ 13-15, 131-148, 170-172, 176-177, 194, 195.a.vii, 195.b.ii-v., 196. These claims depend on Spinderella being a full-fledged member of the group (*i.e.*, a partner in a partnership or joint venture) because it is the only way she could establish a duty that would authorize such claims. A breach of fiduciary duty claim (and, therefore, rights to reclaim royalties and an accounting) require Spinderella to prove "a fiduciary relationship existed between [Spinderella] and [Salt-N-Pepa][.]" *See Neese v. Lyon,* 479 S.W.3d 368, 386 (Tex. App. 2015). Formal business partnerships create fiduciary relationships. *See Jang Won Cho v. Kun Sik Kim,* 572 S.W. 3d 783, 794 (Tex. App. 2019). A partnership is an "express or implied agreement containing four elements: (1) a community of interest in a venture; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise." *Tierra Sol Joint Venture v. City of El Paso,* 155 S.W.3d 503, 507 (Tex. App. 2004). As discussed, below, Spinderella cannot make this showing.

knows it. Spinderella was always a contracted performer for the group.[28] She was hired and fired at the discretion of Salt and Pepa *via* their business entity S & C.[29] Indeed, Spinderella's own correspondence with Salt from 2013 and 2014, when she was rehired to perform with the group, demonstrates: (1) the terms by which she was re-hired, which did not include profit participation or royalties; (2) that she was grateful to Salt and Pepa for providing her with the opportunity to perform with them again; and (3) that Salt and Pepa dictated how Spinderella would perform on stage.[30] If Spinderella was a full partner of the group, she would not be begging Salt and Pepa to be able to perform with them again and be paid a flat fee on a per show basis as an independent contractor.

Furthermore, the group "Salt N Pepa" is—by definition—comprised of Salt and Pepa. The group's name does not include Spinderella. Moreover, the group's business, including its trademark, is completely owned and operated by S & C, whose sole shareholders are Salt and Pepa.[31] Spinderella is not—and never was—a shareholder of S & C.[32] Spinderella never shared in the financial losses of the group "Salt N Pepa" or S & C.[33] For example, in connection with the group "Salt N Pepa's" Las Vegas residency, Salt-N-Pepa lost money. In contrast,

---

[28] *See* Maynes Decl., ¶ 5 (App. 004); Salt Decl.¶ 2 (App. 037).

[29] *See* Maynes Decl. ¶ 5 (App. 004); Salt Decl. ¶ 2 (App. 037).

[30] *See* Maynes Decl., ¶ 5 (App. 004); 2013 E-mail Correspondence between Spinderella and Salt, attached as Exhibit F to Maynes Decl. (App. 022-023) and as Exhibit A to Salt Decl. (App. 040-041); 2014 E-mail Correspondence between Spinderella and Salt attached as Exhibit G to Maynes Decl. (App. 025-026), and Exhibit B to Salt Decl. (App. 043-044).

[31] *See* Maynes Decl., ¶ 6 (App. 005), Salt Decl. ¶ 3 (App. 038).

[32] *See* Maynes Decl., ¶ 6 (App. 005), Salt Decl. ¶ 3 (App. 038).

[33] *See* Maynes Decl., ¶ 6 (App. 005), Salt Decl. ¶ 3 (App. 038).

Spinderella bore no risk and was paid for each performance.[34] Further, Spinderella did not have a right to control or manage the group "Salt N Pepa" or S & C.[35] Indeed, throughout her Complaint, Spinderella concedes that she was paid a flat fee on a per show basis for her involvement in the group and refused to participate in the sharing of losses for each show.[36]

Spinderella's status as an independent contractor (and, therefore, not a full-fledged partner of the group "Salt N Pepa") is further evidenced by the 1099-MISC income statements S & C issued to Spinderella Entertainment, LLC for fiscal years 2014-2018.[37] As explained by the Internal Revenue Service, a 1099-MISC form is used for "services performed by someone who is not your employee[.]"[38] If S & C and Spinderella Entertainment, LLC were in a joint venture or Salt, Pepa, and Spinderella were truly a partnership, the proper tax document would be a Schedule K-1 (Form 1065).[39]

---

[34] *See id.*

[35] *See* Maynes Decl., ¶ 6 (App. 005), Salt Decl. ¶ 3 (App. 038).

[36] *See e.g.,* ECF Doc. 1, ¶¶ 50-53, 109.

[37] *See* Maynes Decl., ¶ 7 (App. 005); 1099-MISC Income Statements From S & C to Spinderella Entertainment LLC for fiscal years 2014-2018 attached as Exhibit H to Maynes Decl. (App. 028-032)

[38] *See* About Form 1099-MISC, Miscellaneous Income, INTERNAL REVENUE SERVICE, https://www.irs.gov/forms-pubs/about-form-1099-misc (last visited July 24, 2019).

[39] *See* About Schedule K-1 (Form 1065), Partner's Share of Income, Deductions, Credits, etc., INTERNAL REVENUE SERVICE, https://www.irs.gov/forms-pubs/about-schedule-k-1-form-1065 (last visited July 24, 2019).

These facts go to the heart of Spinderella's claims of breach of fiduciary duty, misappropriation of royalties, and accounting claims. Spinderella knew she was never a partner of the group. Her attempt to spin the facts to rewrite history is simply a desperate money grab.

### 3. Spinderella Cannot Show A Substantial Likelihood Of Prevailing On Her Tortious Interference Claims.

Salt-N-Pepa in no way sought to interfere with Spinderella's career opportunities—particularly securing a Las Vegas residency.[40] To the contrary, Maynes advocated on behalf of Spinderella to get a Las Vegas residency.[41] Maynes understands that Spinderella did not get a Las Vegas residency because the promoter lacked interest based, at least in part, over a concern about ticket sales (would Spinderella draw a sufficient crowd).[42] Maynes sought to assuage those concerns, but was unsuccessful.[43]

Moreover, Spinderella does not allege any independently tortious or unlawful act that could constitute tortious interference with a business relationship. In her Complaint, the only specific conduct alleged by Spinderella is that she was asked to leave the group "Salt N Pepa."[44] In Texas, for example, all employment contracts (let alone independent contractor contracts) are considered at-will and, absent an agreement to the contrary, may be terminated "for good cause,

---

[40] *See* ECF Doc. 1, ¶¶ 50-53, 74-75, 161-169, 187, 191, 195.a.viii. To prevail on her tortious interference with business relations claim, Spinderella must demonstrate Salt-N-Pepa engaged in "an independently tortious or unlawful act … that prevented the relationship from occurring[.]" *Dunham Engineering, Inc. v. Sherwin Williams Co.,* 404 S.W.3d 785, 797 fn. 3 (Tex. App. 2013).

[41] *See* Maynes Decl., ¶ 8 (App. 005).

[42] *See id.*

[43] *See id.*

[44] ECF Doc. 1, ¶ 165.

bad cause, or no cause at all."[45] As demonstrated in Section II.B.2., *supra,* Spinderella was an independent contractor of S & C, and she was terminated. Her claim that her termination tortiously interfered with her business relationships—not only fails to state a claim—but demonstrates that, Salt and Pepa could draw a crowd without Spinderella, but not vice-versa.

Furthermore, Spinderella's claims that she was not paid for the Las Vegas residency with Salt and Pepa are patently false and she knows it. Spinderella was provided two payments of $31,500 for a total of $63,000 on December 24, 2018, and January 8, 2019, for the Las Vegas residency.[46] This resulted in paying all monies owed to Spinderella for her work on the Las Vegas residency.[47] The testimony in her Verified Complaint that she was not fully compensated is simply false.

These facts go to the heart of Spinderella's tortious interference claims. They demonstrate that, contrary to Spinderella's spin, the exact opposite is true: Salt-N-Pepa went to great lengths to advance Spinderella's career even after she was no longer a part of the group. Rather than take a moment of quiet reflection and see how her own conduct has interfered with her career goals, Spinderella lashes out at those who have helped her the most. Spinderella's tortious interference based relief should be denied.

---

[45] *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998).

[46] *See* Maynes Decl., ¶ 9 (App. 005-006); Printouts of Wire Transfers for Las Vegas residency from S & C to Spinderella, LLC, which are attached as Exhibit I to Maynes Decl. (App. 034-035).

[47] *See id.*

### C. Spinderella Is Not Entitled To Mandatory Injunctive Relief.

A temporary restraining order is an extraordinary and drastic remedy. Spinderella compounds her incredible request to this Court by also seeking mandatory injunctive relief. A mandatory preliminary injunction, as opposed to a prohibitory injunction, seeks to alter the status quo prior to litigation, rather than maintain it.[48] That is, it mandates that defendants take some action inconsistent with the status quo rather than prohibiting them from altering the status quo.[49] The Fifth Circuit has repeatedly held that mandatory injunctions warrant an even higher standard than prohibitory injunctions.[50] Mandatory preliminary relief, which goes well beyond simply maintaining the status quo *pendente lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.[51] When a plaintiff applies for a mandatory preliminary injunction, such relief should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.[52]

As previously stated, Spinderella has fallen woefully short of proving entitlement to the extraordinary and drastic remedy of a TRO. Therefore, she has necessarily failed to satisfy the heightened standard for mandatory injunctive relief. Her requests for Salt-N-Pepa to issue corrective public notifications and to provide full accountings and to deposit subject revenues

---

[48] *See Texas v. Ysleta del sur Pueblo*, 2018 WL 1566866, at *9 (W.D. Tex. Mar. 29, 2018).

[49] *See id.*

[50] *See Justin Indus., Inc. v. Choctaw Sec.*, L.P., 920 F.2d 262, 268 (5th Cir. 1990) ("[B]ecause [the plaintiff] is seeking a mandatory injunction, it bears the burden of showing a clear entitlement to the relief under the facts and the law.").

[51] *See Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971).

[52] *See Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958).

into a constructive trust clearly seek to alter the status quo rather than to maintain it. Further, Spinderella's request for mandatory injunctive relief runs afoul of the legal requirement that there be no adequate remedy at law available to Plaintiffs. As is the case with the majority of Spinderella's requests to this Court, in the unlikely event that she prevails on any of her incredible claims, she will be able to address them through monetary relief. For these reasons, Spinderella has failed to establish her right to the rarely-granted remedy of a mandatory temporary restraining order.

## IV.
## CONCLUSION

In conclusion, Spinderella's request for a TRO should be denied. There is no irreparable harm to support her request for a TRO, let alone a substantial threat of irreparable harm. There is no urgency justifying the request, especially given that the parties have been negotiating these very issues for months. Further, the vast majority of her claims seek monetary damages, which is completely inappropriate for a TRO. Additionally, Spinderella's claims lack any merit, let alone a substantial likelihood she would prevail on those claims. Therefore, Salt-N-Pepa respectfully request that this Court deny Spinderella's request for a TRO.

Respectfully submitted,

FOX ROTHSCHILD LLP


/s/ C. Dunham Biles
C. Dunham Biles
State Bar No. 24042407
Two Lincoln Centre
5420 LBJ Freeway, Suite 1200
Dallas, Texas 75240
Tel:  972-991-0889
Fax:  972-404-0516
cbiles@foxrothschild.com

**ATTORNEYS FOR SPECIALLY-APPEARING DEFENDANTS**


## CERTIFICATE OF SERVICE

The undersigned certifies that on July 30, 2019, Defendants served a true and correct copy of the foregoing on all known counsel of record via the Northern District of Texas CM/ECF filing system.


/s/ C. Dunham Biles
C. Dunham Biles