## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DEIDRA M. ROPER a/k/a "Spinderella", and SPINDERELLA ENTERTAINMENT, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:19-cv-01651-S |
| CHERYL JAMES-WRAY a/k/a CHERYL JAMES, SANDRA DENTON, JAMES MAYNES, AND S & C PRODUCTIONS, INC., | § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3), AND 12(b)(6), AND BRIEF IN SUPPORT

**FOX ROTHSCHILD LLP**

C. Dunham Biles
State Bar No. 24042407
David Grant Crooks
State Bar No. 24028168
Two Lincoln Centre
5420 LBJ Freeway, Suite 1200
Dallas, Texas 75240
Tel:  972-991-0889
Fax:  972-404-0516
cbiles@foxrothschild.com
dcrooks@foxrothschild.com

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ................................................................................................. 1

II. Applicable Legal Standards ............................................................................................. 2

    A.    Lack of Personal Jurisdiction. ............................................................................ 2

    B.    Improper Venue ................................................................................................... 4

    C.    Failure To State A Claim.................................................................................... 5

III. Arguments And Authorities............................................................................................. 6

    A.    The Court Should Dismiss Plaintiffs' Complaint Because It Lacks Personal

           Jurisdiction Over Defendants. ............................................................................ 6

           1.    The Court Does Not Have General Jurisdiction Over Any Defendant. ..... 6

           2.    The Court Lacks Specific Personal Jurisdiction Over Defendants With

                 Respect To Plaintiffs' Trademark, Right Of Publicity, And Related

                 Claims. ................................................................................................... 7

           3.    The Court Lacks Personal Jurisdiction Over Defendants With Respect

                 To Plaintiffs' Tortious Interference Claim. ............................................... 9

           4.    The Court Lacks Personal Jurisdiction Over Defendants With Respect

                 To Plaintiffs' Breach Of Fiduciary Duty Claim.......................................10

           5.    The Court Lacks Person Jurisdiction Over Defendants With Respect

                 To Plaintiffs' Copyright Claim. .............................................................11

            6.    The Court Lacks Personal Jurisdiction Over Defendants With Respect

                 To Plaintiffs' Contract Related Claims...................................................12

            7.    The Court Lacks Personal Jurisdiction Over Defendants With Respect

                 To Plaintiffs' Fraud Claims. ..................................................................13

8.    This Court Lacks Personal Jurisdiction Over Defendants With Respect To Plaintiffs' Parasitic Claims. ...................................................14

B.    The Court Should Dismiss, Pursuant To Rule 12(b)(3), Plaintiffs' Complaint Because The Northern District Of Texas Is Not The Proper Venue.....................14

   1.    The Court Is Not The Proper Venue For Plaintiffs' Copyright Claim. .....14

   2.    The Court Is Not The Proper Venue For Plaintiffs' Remaining Claims. ...................................................................................................15

C.    The Court Should Dismiss Plaintiffs' Complaint For Failure To State A Claim. ............................................................................................................15

   1.    Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty ..............15

   2.    Plaintiffs Fail To State A Claim For Fraud...............................................17

   3.    Plaintiffs Fail To State A Claim For Breach Of Contract.........................19

   4.    Plaintiffs Fail To State A Claim For Anticipatory Breach Of Contract....20

   5.    Plaintiffs Fail To State A Claim For Promissory Estoppel.......................20

   6.    Plaintiffs Fail To State A Claim For Tortious Interference With Current & Prospective Business Relationships.......................................21

   7.    Plaintiffs Fail To State A Claim For Trademark Infringement, False Designation Of Origin, Trademark Dilution & Right Of Publicity. .........22

   8.    Plaintiffs' Unjust Enrichment Claim Fails...............................................23

   9.    Plaintiffs' Parasitic Claims Also Fail To State A Claim. .........................24

IV. Conclusion ....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allstate Ins. Co. v. Benhamou,*
190 F. Supp. 3d 631 (S.D. Tex. 2016) ................................................................. 25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................................... 5, 22

*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544 (2007) ....................................................................................... 5, 22

*Carmona v. Leo Ship Mgmt., Inc.,*
924 F.3d 190 (5th Cir. 2019) .............................................................................. 3

*Cillarreal v. Wells Fargo Bank, N.A.,*
814 F.3d 763 (5th Cir. 2016) .............................................................................. 6

*Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.,*
963 F.2d 90 (5th Cir. 1992) ................................................................................ 4

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ........................................................................................... 2

*Davis v. Bayless,*
70 F.3d 367, 70 F.3d 367 (5th Cir. 1995) ........................................................... 6

*Dorsey v. Portfolio Equities, Inc.,*
540 F.3d 333 (5th Cir. 2008) ........................................................................... 5, 6

Fin. Acquisition Partners LP v. Blackwell,
440 F.3d 278 (5th Cir. 2006) .............................................................................. 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915 (2011) ........................................................................................... 2

*Gurganus v.* Furniss, No. 3:15-cv-3964,
2016 WL 3745684 (N.D. Tex. July 13, 2016) .................................................... 20

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
466 U.S. 408 ....................................................................................................... 3

*Henley v. Dillard Dept. Stores,*
46 F.Supp.2d 587 (N.D. Tex. 1999) ................................................................. 7, 8

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
892 F.3d 719 (5th Cir. 2018) ................................................................................6

*In re Katrina Canal Breaches Litigation*,
495 F.3d 191 (5th Cir. 2007) ................................................................................5

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
798 F.3d 265 (5th Cir. 2015) ................................................................................6

*Ltd. v. Insta-Mix, Inc.*,
438 F.3d 465 (5th Cir. 2006) ................................................................................2

*Mahmoud v. De Moss Owners Assoc. Inc.*,
865 F.3d 322 (5th Cir. 2017) ..............................................................................16

*McFadin v. Gerber*,
587 F.3d 753 (5th Cir. 2009) .........................................................................2, 3

*Mink v. AAAA Dev. LLC*,
190 F.3d 333 (5th Cir. 1999) ................................................................................8

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
481 F.3d 309 (5th Cir. 2007) ................................................................................4

*N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*,
107 F.Supp.3d 620 (N.D. Tex. 2015) ....................................................................3

*Nuttall v. Juarez*,
984 F.Supp.2d 637 (N.D. Tex. 2013) ....................................................................4

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 ........................................................................................................8

*Rush v. Savchuk*,
444 U.S. 320 (1980) ..............................................................................................3

*Seiferth v. Helicopteros Atuneros, Inc.*,
472 F.3d 266 (5th Cir. 2006) ................................................................................3

*Trois v. Apple Tree Auction Center, Inc.*,
882 F.3d 485 (5th Cir. 2018) ................................................................................4

*Vaughan v. Anderson Reg'l Med. Ctr.*,
849 F.3d 588 (5th Cir. 2017) .........................................................................5, 16

*Walden v. Fiore*,
571 U.S. 277 (2014) ..........................................................................................3, 4

## Other State Cases

*Dunham Engineering, Inc. v. Sherwin Williams Co.*,
    404 S.W.3d 785 (Tex. App. 2013) ......................................................................21

*Gay v. City of Wichita Falls*,
    457 S.W.3d 499 (Tex App. 2014) ......................................................................18

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*,
    546 S.W.3d 648 (Tex. 2018) ..............................................................................18

*Montgomery County Hosp. Dist. v. Brown*,
    965 S.W.2d 501 (Tex. 1998) ..............................................................................19

*MVS Intern. Corp. v. Intern. Advertising Solutions, LLC*,
    545 S.W.3d 180 (Tex. App. 2017) ......................................................................24

*R.M. Dudley Const. Co., Inc. v. Dawson*,
    258 S.W.3d 694 (Tex. App. 2008) ......................................................................23

*T.F.W. Mgmt., Inc. v. Westwood Shores Property Owners Ass'n*,
    79 S.W. 3d 712 (Tex. App. 2002) ......................................................................24

*Tierra Sol Joint Venture v. City of El Paso*,
    155 S.W.3d 503 (Tex. App. 2004) ......................................................................16

*Tri. V. J.T.T.*,
    162 S.W.3d 552 (Tex. 2005) ..............................................................................24

## Federal Statutes

15 U.S.C.
    § 1114 ....................................................................................................................7

17 U.S.C.
    § 114 ....................................................................................................................11

28 U.S.C.
    § 1391 ..........................................................................................................4, 5, 15
    § 1400 ............................................................................................................4, 14

## Other Authorities

Federal Rule of Civil Procedure 9(b) ............................................................5, 17, 25

Federal Rule of Civil Procedure 12(b) ....................................................1, 5, 14, 15

Defendants Cheryl James-Wray a/k/a Cheryl James ("Salt"), Sandra Denton ("Pepa"), James Maynes ("Maynes"), and S & C Productions, Inc. ("S & C") (together, "Defendants") file this Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) (the "Motion") and request that the Court dismiss all claims asserted by Plaintiffs Deidra M. Roper a/k/a "Spinderella" ("Roper") and Spinderella Entertainment, LLC ("Entertainment") (together, "Plaintiffs") pursuant to Rule 12(b)(2), 12(b)(3) and 12(b)(6).

## I.
## SUMMARY OF ARGUMENT

Defendants request that the Court dismiss Plaintiffs' claims for three reasons.  First, this action should be dismissed for lack of personal jurisdiction.  Besides the fortuitous fact that Plaintiffs now reside in Texas, there is no connection between Plaintiffs' allegations and any purposeful contacts Defendants may have with Texas.  Simply put, Defendants do not have sufficient minimum contacts with Texas to support personal jurisdiction.  Second, Plaintiffs' claims should be dismissed for improper venue because they do not arise from any actions by Defendants in Texas or actions directed to Texas.  Indeed, Plaintiffs have not asserted any well-pleaded allegations showing the requisite nexus with the Northern District of Texas.  The relevant alleged actions of Defendants appear to have taken place in New York and Nevada.  Besides Plaintiffs' presences in Texas, there is no connection with the Northern District of Texas.  Accordingly, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(3).  Third, Plaintiffs' claims should be dismiss for failure to state a claim pursuant to Rule 12(b)(6) because they are conclusory and fail to meet the requisite pleading standards.

## II.
## APPLICABLE LEGAL STANDARDS

### A.    Lack of Personal Jurisdiction.

Federal courts may exercise personal jurisdiction over a nonresident defendant only if: "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment."[1]  Only the second step of the inquiry is relevant because Texas's long-arm statute "extends as far as constitutional due process allows.[2]  Due Process is satisfied if defendant's minimum contacts with the forum state and the exercise of personal jurisdiction over that defendant do not offend traditional notions of fair play and substantial justice.[3]  Plaintiff "bears the burden of proving that jurisdiction exists."[4]  There are two types of personal jurisdiction:  (1) specific; and (2) general.[5]  For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."[6]  For corporations, general jurisdiction exists when the company's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state."[7]  Barring rare exceptions, a corporation is only "at home" where it is incorporated or has its principal place of business.[8]  Specific jurisdiction exists when

---

[1] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

[2] *Id.*

[3] *Id.* (internal quoted omitted).

[4] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

[5] *Daimler AG v. Bauman*, 571 U.S. 117, 126-127 (2014).

[6] *Id.* at 137.

[7] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[8] *Daimler*, 571 U.S. 136-139 & n.19.

a "suit aris[es] out of or relate[s] to the defendant's contacts with the forum."[9]  Further, plaintiff

"must establish specific jurisdiction for each [asserted] claim"[10] for each defendant on each

claim.[11]

      To evaluate specific jurisdiction, the Fifth Circuit applies a three-part test:

> (1) whether the defendant had minimum contacts with the forum
> state, i.e. whether it purposely directed its activities toward the
> forum state or purposely availed itself of the privileges of
> conducting activities there; (2) whether the plaintiff's cause of
> action arises out of or results from the defendant's forum related
> contacts; and (3) whether the exercise of personal jurisdiction is
> fair and reasonable.[12]

In tort cases, a "forum State's exercise of jurisdiction over an out-of state intentional tortfeasor

must be based  on intentional conduct by the defendant that creates the necessary contacts with

the forum."[13]  In applying this standard, courts typically consider "the relationship among the

defendant, the forum and the litigation."[14]  Further, it is critical to distinguish between "contacts

with a forum and the purposefulness of those contacts;" a defendant is "subject to jurisdiction

<u>only</u> if it <u>has purposely directed its activities</u> to the forum state or <u>purposefully availed itself</u> of

its protections."[15]  Thus, "injury to a forum resident is not a sufficient connection to the forum.

The proper question is whether the defendant's conduct connects him to the forum in a

---

[9] *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8.

[10] *McFadin,* 587 F.3d at 759.

[11] *Rush v. Savchuk,* 444 U.S. 320, 332 (1980).

[12] *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006).

[13] *Walden v. Fiore,* 571 U.S. 277, 286 (2014); *N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.,* 107 F.Supp.3d 620, 628 (N.D. Tex. 2015) (Personal jurisdiction over foreign activity is only appropriate if the alleged wrongdoing was intentionally directed at the forum state.).

[14] *Id.* at 287.

[15] *Carmona v. Leo Ship Mgmt., Inc.,* 924 F.3d 190, 196 (5th Cir. 2019) (emphasis added).

meaningful way."[16]  In contract cases, plaintiff must demonstrate defendant's "purposeful availement of the benefits and protections of Texas law."[17]  Thus, "[m]erely contracting with a resident of the forum state" and the "exchange of communications in the course of developing and carrying out a contract" do not establish minimum contacts because they do no "constitute the required purposeful availament of the benefits and protections of Texas law."[18]  Instead, courts typically analyze "only those acts which relate to the formation of the contract and the subsequent breach."[19]  Further, the "place where the contract is to be performed" is "a weighty consideration."[20]

## B.    Improper Venue

For Copyright Act claims, venue is governed by 28 U.S.C. § 1400.[21]  A claim brought under the Copyright Act must be brought "in the district in which the defendant or his agent resides or may be found."[22]  An individual defendant "resides in the district of his residence or legal domicile and may be found in a district where he is subject to personal jurisdiction."[23]  With respect to non-copyright claims, venue is governed by 28 U.S.C. § 1391.  Venue is proper in three circumstances:

> (1) a judicial district in which any defendant resides, if all
> defendants are residents of the state in which the district is located;

---

[16] *Walden,* 571 U.S. at 278.

[17] *Moncrief Oil Int'l, Inc. v. OAO Gazprom,* 481 F.3d 309, 312 (5th Cir. 2007).

[18] *Id.* at 311.

[19] *Trois v. Apple Tree Auction Center, Inc.,* 882 F.3d 485, 489 (5th Cir. 2018).

[20] *Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.,* 963 F.2d 90, 94 (5th Cir. 1992).

[21] *Nuttall v. Juarez,* 984 F.Supp.2d 637, 645 (N.D. Tex. 2013).

[22] 28 U.S.C. § 1400(a).

[23] *Nuttall,* 984 F.Supp.2d at 645 (internal quotations omitted).

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such an action.[24]

## C.    Failure To State A Claim

The Court may dismiss a claim for failure to state a claim if the complaint does not provide fair notice of the claim and does not state sufficient factual allegations to show that the right to relief is plausible.[25]  To survive a Rule 12(b)(6) motion to dismiss, therefore, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[26]  Conclusory statements and allegations are not to be considered in determining whether a claim is sufficiently alleged.[27]  After eliminating the conclusions from consideration, and without rewriting the complaint,[28] the Court must then determine whether the remaining well-pleaded allegations plausibly give rise to an entitlement of relief assuming the veracity of those allegations.[29]  Claims for fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[30]  The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements

---

[24] 28 U.S.C. § 1391(b).

[25] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), cert. denied, 552 U.S. 1182 (2008).

[26] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), cert. denied, 552 U.S. 1182 (2008).

[27] *See Ashcroft v.* Iqbal, 556 U.S. 662, 678-79 (2009); Twombly, 550 U.S. at 570.

[28] *See*, *e.g.*, *Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 590-593 (5th Cir. 2017).

[29] *See Id*. at 679.

[30] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-339 (5th Cir. 2008); Fed. R. Civ. Proc. 9(b) ("a party must state with particularity the circumstances constituting fraud.").

contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[31]

In considering a motion to dismiss for failure to state a claim, a court is not confined to considering just the complaint, it may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[32]   Documents are incorporated by reference if they are "referred to in the plaintiff's complaint and are central to her claim."[33]  Taking judicial notice of public records in judicial proceedings is also permissible on a motion to dismiss for failure to state a claim, including prior court orders.[34]  Doing so does not convert a motion to dismiss into a motion for summary judgment.[35]

### III.
### ARGUMENTS AND AUTHORITIES

A.    **The Court Should Dismiss Plaintiffs' Complaint Because It Lacks Personal Jurisdiction Over Defendants.**

1.    **The Court Does Not Have General Jurisdiction Over Any Defendant.**

Plaintiffs concede that the Court does not have general jurisdiction over Defendants by admitting that:  (1) Salt and Maynes are New York residents in the counties of Suffolk and

---

[31] *Dorsey,* 540 F.3d at 339.

[32] *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).

[33] *Cillarreal v. Wells Fargo Bank, N.A.,* 814 F.3d 763, 766 (5th Cir. 2016).

[34]  *U.S. ex rel. Long v. GSDMIdea City, L.L.C.,* 798 F.3d 265, 274 (5th Cir. 2015); *Davis v. Bayless,* 70 F.3d 367, 70 F.3d 367, 372 (5th Cir. 1995).

[35] Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006).

Westchester respectively;[36] (2) Pepa is a resident of Clark County, Nevada;[37] and (3) S & C is a New York corporation with its principal place of business in Suffolk County, New York.[38]  The Court, therefore, does not have general jurisdiction over Defendants because none of them reside, are incorporated, or have their principal places of business, in Texas.[39]

### 2.   <u>The Court Lacks Specific Personal Jurisdiction Over Defendants With Respect To Plaintiffs' Trademark, Right Of Publicity, And Related Claims.</u>

Plaintiffs have not shown that the Court has specific jurisdiction over Defendants with respect to their claims for:  (1) infringement of registered trademark and service mark (Count 1); (2) false designation of origin (Count 2); (3) trademark dilution (Count 3); (4) misappropriation of plaintiff Roper's persona and identity (Count 8); and (5) unjust enrichment (Count 15) (together, "Trademark and Right of Publicity Claims").[40]

The Trademark and Right of Publicity Claims are predicated on the purported unauthorized use by Defendants of Plaintiffs' name, likeness, and trademark in an unspecified national advertising campaign to promote the group Salt N Pepa.[41]  Plaintiffs do not allege that any purported act of infringement occurred in Texas[42] or that Defendants' purported acts of

---

[36] *See* ECF Doc. 1 ¶¶ 3, 5; *see* Declaration of James Maynes ("Maynes Decl.") ¶2 attached to the Appendix ISO Defendants' Motion to Dismiss ("APP" SNP-000002); *see also* Declaration of Cheryl James p/k/a Salt ("Salt Decl.") ¶2 (APP SNP000005).

[37] *See id.* ¶ 4; *See* Declaration of Sandra Denton p/k/a Pepa ("Pepa Decl.") ¶2 (APP SNP000009).

[38] *See Id.* ¶ 6. This allegation is technically incorrect.  S & C's principal place of business is Suffolk County.  *See* Salt Decl. ¶ 3 (APP SNP000005).

[39] *See supra* nn. 6-8.

[40] *See* ECF Doc. 1, ¶¶ 79-99, 126-130, 173-175 (Counts 1-3 and 8).

[41] *See id.*; *see also* 15 U.S.C. § 1114(1)(a); *Henley v. Dillard Dept. Stores,* 46 F.Supp.2d 587, 590 (N.D. Tex. 1999); ECF Doc. 1 ¶¶ 61, 79-99, 126-130.

[42] *See generally* Complaint.

infringement were purposefully directed at Texas.[43]  Instead, Plaintiffs assert only that a national

advertising campaign was for "shows in the Cayman Islands through Indio, California in

February 2019" for the "nationwide "Mix-Tape Tour."[44]  Those allegations do not demonstrate

that Defendants had any relevant contacts with Texas, much less purposely availed themselves of

the benefits of Texas, or purposefully directed their conduct to Texas with respect to the

Trademark and Right of Publicity Claims.

Plaintiffs baldly assert that "Defendants have committed substantial acts of infringement

in the State of Texas and throughout the United States via the internet, (inclusive of Texas),

thereby making the Defendants subject to the personal jurisdiction of the Court."[45]  That

conclusory allegation is insufficient to establish minimum contacts for at least two reasons.

First, the allegation is not well-pleaded; it is conclusory.  Moreover, as discussed above,

Plaintiffs also allege a national advertising campaign, but do not assert any contacts with Texas.

Second, Plaintiffs' conclusory allegation that advertising occurred over the internet is insufficient

to confer personal jurisdiction over Defendants in Texas.[46]  For example, the Fifth Circuit

explained, "personal jurisdiction is not appropriate" when a defendant "merely established a

passive website that does nothing more than advertise on the Internet."[47]  Plaintiffs do not allege

that the purported infringement occurred *via* Salt N Pepa's website, much less that the website is

not passive.

---

[43] *Id.*

[44] *Id.* ¶ 61.

[45] *See* ECF Doc. 1 ¶ 9.

[46] *See Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 869.

[47] *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir. 1999).

Accordingly, the Court should dismiss Plaintiffs' Trademark and Right of Publicity Claims for lack of personal jurisdiction over Defendants.

### 3.    The Court Lacks Personal Jurisdiction Over Defendants With Respect To Plaintiffs' Tortious Interference Claim.

The Court lacks personal jurisdiction over Defendants in regard to Plaintiffs' tortious interference claim (Count 13) because Plaintiffs fail to plead facts demonstrating that any conduct relating to the claim occurred in Texas.[48]  Instead, Plaintiffs apparently rely on their conclusory allegation that "a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the state of Texas."[49]  Not only is that allegation insufficient to confer personal jurisdiction,[50] but it is belied by the other allegations which demonstrate that the relevant alleged acts took place in New York and Nevada, and not in Texas.

First, Plaintiffs' tortious interference claim concerns the purported lost opportunity to perform a solo residency in Las Vegas.[51]  Nevada, therefore, was the location of the alleged lost business opportunity.  Second, Roper claims her termination from the group Salt N Pepa interfered with that opportunity.[52]  The termination letter was sent on behalf of S & C (a New York corporation) from Los Angeles, California to Plaintiffs' counsel in New Jersey when Plaintiffs appear to allege that Roper was residing in Las Vegas, Nevada.[53]  Nevada, New York, New Jersey and California therefore are where the alleged acts comprising the interference claim

---

[48] *See* ECF Doc. 1 ¶¶ 161-169.

[49] *See Id.* ¶ 9.

[50] *See supra* n. 46.

[51] *See Id.* ¶¶ 162.

[52] *See Id.* ¶¶ 165-166.

[53] *See* Salt Decl. ¶7 (APP SNP-000006); ECF Doc. 1 ¶¶ 51, 154, 165.

occurred. <u>Third</u>, Plaintiffs' conclusory assertion that Defendants "hindered and failed to reasonably facilitate Roper's DJ residency," further emphasizes that any purported acts of interference would have occurred in Nevada where Defendants' were located (*i.e.,* not Texas) and would have been directed at Nevada where Roper was located at the time and where her alleged business opportunity was—namely, performing at the Paris Hotel in Las Vegas.[54]  In other words, with regard to the tortious interference claim, all of the relevant contacts were with New York and Nevada.  Accordingly, the Court should dismiss Plaintiffs' tortious interference claim for lack of personal jurisdiction over Defendants.

**4.      <u>The Court Lacks Personal Jurisdiction Over Defendants With Respect To Plaintiffs' Breach Of Fiduciary Duty Claim.</u>**

The Court lacks personal jurisdiction over Defendants in regard to Plaintiffs' breach of fiduciary duty claim (Count 10) for at least three reasons.  <u>First</u>, Plaintiffs' Complaint does not specify where the alleged collection and concealment of royalties occurred (*i.e.,* the breaches that serve as the basis of their breach of fiduciary duty claim), much less establish that Defendants had sufficient purposeful contacts with Texas specific to this claim.[55]  <u>Second</u>, Plaintiffs allege that Salt (New York resident) and Pepa (Nevada resident) owed Roper a fiduciary duty and all Defendants (Maynes and S & C included who were located in New York) breached those duties by the purported collection and concealment of royalties.[56]  Thus, there is not a contact with Texas.  <u>Third</u>, the allegations that relate to the purported continued exploitation of Plaintiffs' name, likeness, and/or mark have already been addressed in Section III.A.2.  Plaintiffs, therefore,

---

[54] *See* ECF Doc 1 ¶¶ 3-6, 154, 165.

[55] *See* ECF Doc 1 ¶¶ 142-148.

[56] *See* ECF Doc. 1, ¶¶ 3-7, 143-145.

have failed to establish that Defendants have any, much less, sufficient purported contacts with Texas in connection with the breach of fiduciary duty claim. Accordingly, the Court should dismiss Plaintiffs' breach of fiduciary duty claim for lack of personal jurisdiction over Defendants.

### 5. The Court Lacks Person Jurisdiction Over Defendants With Respect To Plaintiffs' Copyright Claim.

The Court lacks personal jurisdiction over Defendants with regard to Plaintiffs' copyright claim (Count 4) for at least three reasons. First, Plaintiffs do not specify where Plaintiffs' SoundExchange royalties where purportedly misappropriated by Defendants, much less plead that such conduct occurred in Texas.[57] Second, as Plaintiffs concede, SoundExchange is the entity responsible for collecting such performer royalties, which is located in Washington D.C.[58] Plaintiffs allege that the royalties were collected by Salt and Pepa (who were located in New York and Nevada) from SoundExchange (located in Washington D.C.).[59] Third, Plaintiffs concede that, from the beginning of the Las Vegas Residency in October 2018 and appear to allege Roper was living in Las Vegas when she was terminated on January 4, 2019.[60] Shortly thereafter, Plaintiffs submitted a claim to SoundExchange.[61] The right Plaintiffs seek to enforce (i.e., 17 U.S.C. § 114(g)(2)(D)) was signed into law on October 11, 2018, and the purported

---

[57] See ECF Doc. 1 ¶¶ 100-107.

[58] See ECF Doc. 1 ¶¶ 103-104; see also Salt Decl. ¶4 (APP SNP-000005); Pepa Decl. ¶4 (APP SNP-000009).

[59] See ECF Doc. 1 ¶¶ 3-6, 103; see also Salt Decl. ¶4 (APP SNP-000005); Pepa Decl. ¶4 (APP SNP-000009).

[60] See ECF Doc. 1 ¶¶ 51, 154.

[61] See ECF Doc. 1 ¶¶ 103-106.

misappropriation occurred when Roper was located in Las Vegas.[62]  The only possible

connection between this claim and Texas is Plaintiffs' unilateral activity of making a claim to

SoundExchange possibly, though not alleged in the Complaint, from Texas.  Accordingly, the

Court should dismiss Plaintiffs' copyright claim for lack of personal jurisdiction over

Defendants.

6.     **The Court Lacks Personal Jurisdiction Over Defendants With Respect To Plaintiffs' Contract Related Claims.**

Plaintiffs alleges a variety of contract related claims, including:  (1) breach of contract

(Count 5); (2) anticipatory breach (Count 6); and (3) promissory estoppel (Count 7) (together,

the "Contract Claims").[63]  The Contract Claims should be dismissed because Plaintiffs fail to

allege any connection between those claims and Texas.[64]  The unifying thread among those

claims is the termination notice sent on behalf of the New York corporation, S & C, on January

4, 2019, to Plaintiffs' New Jersey counsel, when Plaintiffs appear to allege Roper was located in

Las Vegas.[65]  Further, Plaintiffs' breach of contract claim concerns the Las Vegas Residency,

which obviously was in Las Vegas, Nevada.[66]  The anticipatory breach claim is premised on The

Mix-Tape Tour and related activities, which Plaintiffs allege were to be performed "in the

Cayman Islands through Indio, California," but do not allege were to be performed in Texas.[67]

---

[62] *See* ORRIN G. HATCH—BOB GOODLATTE MUSIC MODERNIZATION ACT, PL 115-264, October 11, 2018, 132 Stat 3676.

[63] *See* ECF Doc. 1 ¶¶ 108-125.

[64] *Id.*

[65] *Id.* ¶¶ 51, 54-55, 109-111, 114-119, 121-125, 154.

[66] *Id.* ¶¶ 108-112.

[67] *Id.* ¶¶ 114-119.

The promissory estoppel claim is vaguely predicated on "business and contractual relationships with Defendants" (*i.e.*, the aforementioned agreements).[68]  There is no connection between those claims and Texas, either as pleaded in the Complaint, or as a matter of fact.  Accordingly, the Court should dismiss Plaintiffs' the Contract Claimsfor lack of personal jurisdiction over Defendants.

   **7.    The Court Lacks Personal Jurisdiction Over Defendants With Respect To Plaintiffs' Fraud Claims.**

   Three alleged representations serve as the bases for Plaintiffs' fraud claim (Count 11).  The first representation was allegedly made by Maynes to Roper in the Fall of 2018.[69]  Maynes' business activities are, and have been, based in New York and Roper at the time was living in Las Vegas for the Las Vegas Residency.[70]  The second alleged representation was purportedly made by Salt and Pepa.[71]  That allegation not only fails to comply with the pleading requirements for fraud—namely, it fails to specify the time and place of the representation (*see* Section III.C.2., *infra*)—but Plaintiffs give no indication that those alleged representations occurred in Texas.[72]  The third alleged representation purportedly was made by Pepa.[73]  Again, that allegation fails to comply with the pleading requirements for fraud because it does not specify the place of the representation (*see* Section III.C.2., *infra*) and, again, Plaintiffs give no

---

[68] *Id.* ¶¶ 121-122.

[69] *See* ECF Doc. 1 ¶ 150.

[70] *Id.* ¶¶ 51, 154; *see also* Maynes Decl. ¶¶ 2-3, 5 (APP SNP-000002); Pepa Decl. ¶5 (APP SNP-000009).

[71] *Id.* ¶ 152.

[72] While unclear, it appears this representation was made during the course of "national and international tour from 2016 through 2018, designated as the 'I Love The 90s Tour.'" *Id.* at ¶¶ 41-43.

[73] *Id.* ¶ 152.

indication that the purported representations occurred in Texas.  To the contrary, while unclear, it appears that this representation allegedly occurred in 2001 when Roper was residing in California and, in any event, was not living in Texas.[74]  None of the purported representations underlying Plaintiffs' fraud claim, therefore, concerned, were made in, or were directed to, Texas.  Accordingly, the Court should dismiss Plaintiffs' fraud claim for lack of personal jurisdiction over Defendants.

### 8.    This Court Lacks Personal Jurisdiction Over Defendants With Respect To Plaintiffs' Parasitic Claims.

Plaintiffs' four remaining claims—namely, civil conspiracy (Count 12), misappropriation of income and royalties (Count 9), unfair competition (Count 14), and for an accounting (Count 16)—are all dependent on Plaintiffs' previously mentioned claims (*i.e.*, parasitic).[75]  None of the allegations in those claims specify any conduct that took place in Texas.[76]  The Court, therefore, should dismiss the parasitic claims for lack of personal jurisdiction over Defendants for the reasons set forth above in regard to Plaintiffs' other claims.

### B.    The Court Should Dismiss, Pursuant To Rule 12(b)(3), Plaintiffs' Complaint Because The Northern District Of Texas Is Not The Proper Venue.

### 1.    The Court Is Not The Proper Venue For Plaintiffs' Copyright Claim.

The Northern District of Texas is not the proper venue for Plaintiffs' copyright claim (Count 4) under 28 U.S.C. § 1400(a) because Defendants do not reside[77] and cannot be "found"

---

[74] *Id.* ¶¶ 25-26, 31, 152.  Roper did not move to Dallas, Texas until 2010.  *See also* Pepa Decl. ¶6 (APP SNP-000009).

[75] *See* ECF Doc. 1 ¶¶ 131-141, 157-160, 170-172, 176-177.

[76] *Id.*

[77] *See* Section III.A.1.

in the Northern District of Texas.[78]   Accordingly, the Court lacks personal jurisdiction over

Defendants for Plaintiffs' copyright claim.

### 2.      The Court Is Not The Proper Venue For Plaintiffs' Remaining Claims.

The Northern District of Texas is not the proper venue for Plaintiffs' remaining claims.

As set forth in Section III.A.1., Defendants are not located in the Northern District of Texas.

Further, as established in Sections III.A.1-4 and III.A.6-8, a substantial part of the events or

omissions giving rise to Plaintiffs' claims did not occur in the Northern District of Texas, but

rather in the Southern or Eastern District of New York (because that is where S & C, Maynes,

and Salt (primarily) were located, and many of the alleged events occurred) or the District of

Nevada (because this is where many of the events relating to the Las Vegas residency occurred

and where Pepa resides and Salt and Roper temporarily resided).   Under 28 U.S.C. 1391(b)(2),

the Southern or Eastern District of New York or the District of Nevada, would be the most

appropriate venue for this action because a substantial amount of the alleged events or omissions

giving rise to Plaintiffs' claims occurred in those districts.   Further, those are the districts in

which Defendants reside.   Accordingly, the Court should dismiss Plaintiffs' Complaint for

improper venue pursuant to Rule 12(b)(3).

### C.      The Court Should Dismiss Plaintiffs' Complaint For Failure To State A Claim. [79]

### 1.      Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty

Plaintiffs' breach of fiduciary duty claim (Count 10) fails because Plaintiffs do not allege

---

[78] *See* Section III.A.5.

[79] Defendants do not concede that Texas law applies to Plaintiffs' claims.   But it appears Plaintiffs contend Texas law applies and, for purposes of this Motion only, Defendants cite Texas substantive law as to state law claims.

facts demonstrating the existence of a fiduciary relationship between Defendants and Plaintiffs.[80]
Plaintiffs allege the conclusion that Salt and Pepa owed Roper "a fiduciary duty, inclusive of a
duty of good faith and loyalty, as a principal member of the [Salt N Pepa group] in connection
with the group's commercial activities and income-producing pursuits."[81]  Plaintiffs, however,
do not allege any facts to demonstrate the predicate to such duties—namely, a relationship that
would give rise to fiduciary relationship.  Indeed, Plaintiffs do not even, in a conclusory fashion,
assert such a relationship.[82]

Moreover, even if the Court were to endeavor to rewrite and untangle Plaintiffs'
Complaint to try to support the existence of such a relationship (which the Fifth Circuit explicitly
prohibits),[83] it would not assist Plaintiffs.  In particular, it appears that Plaintiffs are suggesting,
without in fact pleading even in conclusory form (because it would be demonstrably false), that
Plaintiffs and Defendants were partners.  A partnership, however, is an "express or implied
agreement containing four elements:  (1) a community of interest in a venture; (2) an agreement
to share profits; (3) an agreement to share losses; and (4) a mutual right of control or
management of the enterprise."[84]  Plaintiffs do not allege any of those elements, though they do
request an equal share of S & C's profits.  To the contrary, Plaintiffs admit that, instead of
receiving a share of profits for the Las Vegas Residency, Roper agreed to receive a "per show

---

[80] *Mahmoud v. De Moss Owners Assoc. Inc.,* 865 F.3d 322, 335 (5th Cir. 2017).

[81] *See* ECF Doc. 1 ¶ 143.

[82] At most, Plaintiffs assert that Salt N Pepa performed as a trio, seek a one-third interest, and that some third parties paid Plaintiffs the same as they paid Salt and Pepa.  *See* ECF Do. 1.  That for periods of time (including before her) three people performed with the group, that Plaintiffs seek a one-third interest, and that some third parties paid Plaintiffs equal amounts as they did Salt and Pepa, individually, does not demonstrate a fiduciary relationship.

[83] *See e.g., Vaughan*, 849 F.3d at 590-593.

[84] *Tierra Sol Joint Venture v. City of El Paso,* 155 S.W.3d 503, 507 (Tex. App. 2004).

fee" or "specified flat fee payment."[85]  When such payments were allegedly not paid on time and

Defendants allegedly requested that Roper accept a lesser amount than previously agreed upon,

Roper alleges she refused and only agreed to deferred compensation and a <u>higher</u> per show fee

for the Mix-Tape Tour.[86]  Thus, Plaintiffs' own allegations demonstrate not only that a

partnership claim is not plausible, but that no such relationship ever existed.

Moreover, the judicially noticeable documents submitted in connection with Defendants'

Response in Opposition to Plaintiffs' Temporary Restraining Order (ECF Docs. 23-24)

unequivocally demonstrate that:  (1) Spinderella Entertainment, LLC was an independent

contractor for S & C; (2) Roper, through her loan-out company, Spinderella Entertainment, LLC,

was paid a flat-fee for Roper's services; and (3) the agreement between the parties was that

Roper would have no control over her performances.[87]  Plaintiffs, therefore, were not partners

with Defendants.  Plaintiffs, therefore, have not alleged the existence of a fiduciary relationship

between Defendants and Plaintiffs.  Accordingly, the claim should be dismissed.

### 2.    <u>Plaintiffs Fail To State A Claim For Fraud.</u>

Plaintiffs fraud claim (Count 11) is based on three alleged misrepresentations.[88]  The first

representation was allegedly made by Maynes in the Fall of 2018 concerning Roper's per-

performance payment in the Mix-Tape Tour and the Las Vegas Residency.[89]  That allegation

does not satisfy the specificity requirement of Rule 9(b) because Plaintiffs do not specify the

---

[85] *See* ECF Doc. 1 ¶¶ 50-51.

[86] *See Id.* ¶¶ 52-53.

[87] *See* ECF Doc. 23, pp. 8-11; ECF Doc. 24, pp. SNP-000004-5 ¶¶ 5-7, SNP-000021-32; SNP-000037-38 ¶ 2-3, SNP-000039-44.

[88] *See* ECF Doc. 1 ¶¶ 150-152.

[89] *See Id.* ¶ 150.

location of the misrepresentation, nor facts demonstrating why the statement was fraudulent (*i.e.*, why Maynes did not intend to fulfill this alleged representation when it was made).[90]  Further, Plaintiffs' fraud claim is duplicative of their breach of contract claim.[91]

The second representation was allegedly made by Salt and Pepa and concerns the sharing of merchandising, meet and greet income and after party income.[92]  Plaintiffs do not allege the time, place, whether the statement was false, or facts demonstrating the alleged representation was fraudulent (*i.e.,* that Salt and Pepa did not intend to fulfill this alleged representation when it was made).[93]  Further, Plaintiffs do not specifically plead that:  (1) there was merchandising, meet-and-greet, and after-party, income; (2) that Plaintiffs participated in such income earning activities; or (3) how allegedly any such income was not equitably distributed.  Moreover, Plaintiffs do not provide any explanation for the meaning of the subjective term "equitable," because of course it lacks a definite meaning sufficient to constitute fraud.  Additionally, the claim is duplicative of a breach of contract claim asserted by Plaintiffs.

Finally, Plaintiffs allege that Pepa represented there were certain funds owing to Plaintiffs, which Plaintiffs assume was from the prior release of foreign recordings.[94]  Plaintiffs do not allege the time and place of the statement, whether it was false, nor facts demonstrating it

---

[90] *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC,* 546 S.W.3d 648, 654 (Tex. 2018).

[91] *See Gay v. City of Wichita Falls,* 457 S.W.3d 499, 509 (Tex App. 2014).

[92] *See* ECF Doc. 1 ¶ 151.

[93] While unclear, it appears that this statement was made sometime in 2016 through 2018 over the course of the international "I Love The 90s Tour."  *See* ECF Doc. 1 ¶¶ 41-43.  Regardless, this allegation of fraud still fails to satisfy the specificity requirement because it does not plead the time and place of the representation with particularity, including facts demonstrating the statement was fraudulent (*i.e.,* Salt and Pepa never intended to fulfill this alleged representation when it was made).

[94] ECF Doc. 1 ¶ 152.

was fraudulent (*i.e.*, that Pepa never intended to fulfill this alleged representation when it was

made).[95]   Further, Plaintiffs do not allege, nor could they allege, that Plaintiffs reasonably relied

on the representations to their detriment.   Accordingly, the Court must dismiss Plaintiffs' claims

for fraud (Count 11).

### 3.   Plaintiffs Fail To State A Claim For Breach Of Contract.

Plaintiffs' breach of contract claim (Count 5) is based upon the allegation that Roper was

fired from continuing to perform with Salt and Pepa in 2019 for the Las Vegas Residency.[96]

This claim fails for at least two reasons.   First, this was a contract for services.   Under Texas law,

absent an agreement to the contrary, an employment contract can be terminated by either party

for "good cause, bad cause, or no cause at all."[97]   Plaintiffs admit that Roper was a contracted

performer by conceding Roper was paid on a flat fee basis per show for the Las Vegas

Residency.[98]   Second, Plaintiffs have failed to plead who the parties are to the agreement (they

improperly fail to distinguish between Plaintiffs and among Defendants)[99] and fail to plead facts

---

[95] While unclear, it appears that this statement was made sometime in 2001.  *See* ECF Doc. 1 ¶ 31.  If so, this claim would be time-barred by the four year statute of limitations for fraud claims.  *See* Tex. Civ. Prac. & Rem. § 16.004(a)(4).  Additionally, Plaintiffs in no way explain how they reasonably relied on Pepa's 2001 representation to their detriment.  *See* ECF Doc. 1 ¶¶ 152 and 154.  Regardless, this allegation still fails to satisfy the specificity requirement because it fails to specify the time and location of the representation with particularity, including facts demonstrating the alleged representation was fraudulent (*i.e.,* Pepa never intended to fulfill this alleged representation when it was made).

[96] *See* ECF Doc. 1 ¶¶ 108-112.

[97] *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998).

[98] *Id.* ¶ 110.  Nor were Plaintiffs partners with Salt, Pepa or S & C for the reasons discussed in Section III.C.1,

[99] Throughout their Complaint Plaintiffs fail to distinguish between Plaintiffs and among Defendants.  *See., e.g.*, ECF Doc. 1 ¶¶ 85-86, 89-92, 96 (failing to distinguish between Plaintiff), 97-98, 99 (failing to distinguish between Plaintiffs), 107 (failing to distinguish between Plaintiffs), 109-112 (failing to distinguish between Plaintiffs and among Defendants such that it is impossible to decipher who are allegedly parties to the contract (both Plaintiffs and all Defendants are certainly not all parties to the alleged contract), 120 (failing to distinguish between Plaintiffs), 121-125 (failing to distinguish between Plaintiffs and among Defendants), 127, 129, 130 (failing to distinguish between Plaintiffs), 132, 134, 139, 141 (failing to distinguish between Plaintiffs), 144-146, 148 (failing to distinguish between Plaintiffs), 150, 153 (fails to distinguish among Defendants and fails to identify what is meant

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3) AND 12(b)(6), AND BRIEF IN SUPPORT**                                                **Page 19**

demonstrating that Plaintiffs were entitled to payment for shows at which Roper did not perform.

Accordingly, the Court should dismiss Plaintiffs' claim for breach of contact (Count 5)  for

failure to state a claim for which relief can be granted.

### 4.      Plaintiffs Fail To State A Claim For Anticipatory Breach Of Contract.

Plaintiffs' anticipatory breach claim (Count 6) is based on Defendants allegedly not

consummating the deal with Plaintiffs for The Mix-Tape Tour and terminating Plaintiffs'

involvement with the group Salt N Pepa on January 4, 2019.[100]  The termination of Roper's

ability to perform with Salt and Pepa did not constitute a breach because Roper could be

terminated, for any reason, or no reason at all, as set forth in Section III.C.3 above.  Further, the

allegations fail to state a claim for the reasons set forth above in regard to Count 5.  Accordingly,

the Court should dismiss Plaintiffs' claim for failure to state a claim.

### 5.      Plaintiffs Fail To State A Claim For Promissory Estoppel.

Plaintiffs' promissory estoppel claim (Count 7) relies on threadbare allegations and legal

conclusions and, thus, fails to allege sufficient facts to establish the claim.[101]  At best, Plaintiffs'

promissory estoppel claim is duplicative of Plaintiffs' breach of contract, anticipatory breach,

---

by "Plaintiff"), 155, 156 (failing to distinguish between Plaintiffs), 158-160, 164-168 (failing to distinguish among Defendants), 169 and 172 (failing to distinguish between Plaintiffs), 174, 175, and 177 (failing to distinguish between Plaintiffs).  In addition, Plaintiffs often fail to distinguish Salt and Pepa acting in their personal capacities from them acting as S & C.  *See, e.g., id.* ¶ 110.  This type of group pleading fails to satisfy the requirements of Rule 8.  *Gurganus v.* Furniss, No. 3:15-cv-3964, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) ("[G]roup pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8 by making it impossible to ascertain which particular Defendant(s) are supposedly responsible for the act alleged.")  As a result of Plaintiffs' improper grouping of parties, it is impossible to even decipher who the parties are to the alleged agreements and which plaintiff is asserting which claims against which defendants.  Accordingly, Plaintiffs' claims should be dismissed.

[100] *See* ECF Doc. 1 ¶¶ 113-120.

[101] *See* ECF Doc. 1 ¶¶ 121-125.

and fraud claims.[102] For the same reasons those claims fail, Plaintiffs' promissory estoppel claim also fails. Accordingly, the Court should dismiss Plaintiffs' Promissory Estoppel claim.

### 6. Plaintiffs Fail To State A Claim For Tortious Interference With Current & Prospective Business Relationships.

The gravamen of Plaintiffs' claim for tortious interference claim (Count 13) is that the termination notice allegedly prevented Spinderella from pursuing other business opportunities.[103] A tortious interference with prospective business relations claim has four elements: (1) "a reasonable probability that the plaintiff would have entered into a business relationship;" (2) "an independently tortious or unlawful act by the defendant that prevented the relationship from occurring;" (3) "the defendant did such act with a conscious desire to prevent the relationship form occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct;" and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference."[104]

Plaintiffs' claim fails for at least two reasons. First, Plaintiffs fail to allege any unlawful conduct by Defendants. As set forth in Section III.C.3 above, Defendants' termination of Roper was not unlawful and Plaintiff fails to plead any other tortious or unlawful conduct by Defendants that interfered with Spinderella's prospective contractual relationships.[105] Second, Plaintiffs fail to allege they suffered actual harm from Defendants' purported interference.

---

[102] *Compare Id. with* ¶¶ 108-120 and 149-156.

[103] *See* ECF Doc. 1 ¶¶ 151-169.

[104] *Dunham Engineering, Inc. v. Sherwin Williams Co.,* 404 S.W.3d 785, 797 fn. 7 (Tex. App. 2013).

[105] Plaintiffs also make the threadbare recital that Defendants "hindered and failed to reasonably facilitate Roper's DJ Residency." *See Id.* ¶ 169. First, Plaintiffs fail to allege any facts that demonstrate how Defendants hindered Roper's ability to secure a residency. Second, Plaintiffs fail to allege any facts that would impose an affirmative duty that would require Defendants to affirmatively facility Roper to secure a residency.

While Plaintiffs mention a potential residency at the Paris Hotel, Plaintiffs do not allege that the termination notice from S & C resulted in Plaintiffs losing that business opportunity, but rather vaguely allege that it interfered with "consummation of business opportunity [*sic*]" and her ability to "pursue gainful business opportunities as a professional deejay."[106]  In other words, Plaintiffs have failed to plead that the alleged acts proximately caused compensable injury. Accordingly, Plaintiffs' claim for tortious interference (Count 13) should be dismissed for failure to state a claim.

### 7.    Plaintiffs Fail To State A Claim For Trademark Infringement, False Designation Of Origin, Trademark Dilution & Right Of Publicity.

Plaintiffs' Trademark and Right of Publicity Claims (Counts 1-3 and 8) rely on threadbare legal recitals that do not meet the pleading requirements of *Iqbal* and *Twombly*.[107] Plaintiffs do not specify how Plaintiffs' name, likeness, and marks were used in advertising, in what medium, or in connection with what goods or services.[108]  Moreover, they improperly fail to distinguish among Defendants by simply lumping them together. [109]  The reason for Plaintiffs' failure to include factual allegations or examples of alleged infringement became evident in their Reply in Support to Plaintiffs' Temporary Restraining Order (the "Reply" (ECF Doc. 25))—

---

[106] *See Id.* ¶ 166. The same is true for Plaintiffs' allegation that Defendants' alleged trademark and right of publicity violations resulted in interfering with business opportunities.  *See Id.* ¶ 168.  Plaintiffs fail to specify any business opportunities that were reasonably certain.

[107] *See* ECF Doc. 1 ¶¶ 60-61, 68, 79-99, 126-130.  It should be noted that Plaintiffs concede that the registered "Spinderella" mark is owned by only by Plaintiff Spinderella Entertainment, LLC, yet Count 1 for Infringement of Registered Trademark & Service Mark is brought by both Plaintiffs.  *Id.* ¶¶ 80 and 87.  Further, Roper's name and likeness, which serves as the basis of Right of Publicity claim (Count 8) is unique to Plaintiff Roper yet brought by both Plaintiffs.  *Id.* ¶ 129.

[108] *Id.* ¶¶ ¶¶ 60-61, 68, 79-99, 126-130.

[109] *See id.*; *see supra* n. 99.

which are incorporated by reference in Plaintiffs' Complaint and subject to judicial notice.[110]

The Reply provided three purported examples of alleged infringement.[111]  The first two examples

(a picture of Salt, Pepa, and Roper buried in the MerchDirect website and the "I Love The 90s"

tour website) was demonstrated to not be "used" by Defendants—a threshold requirement for

Plaintiffs' Trademark and Right of Publicity Claims.[112]  As for replacing Roper with DJ Cocoa

Chanelle, Plaintiffs admit that the only similarity was that they were both "middle-aged African

American women."[113]  To say every middle-aged African American woman who deejays

infringes on Roper's name and likeness does not state a plausible claim.  Accordingly, the Court

should dismiss Plaintiffs' Trademark and Right of Publicity Claims (Counts 1-3 and 8) for

failure to state a claim.

### 8.   Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs' unjust enrichment claim (Count 15) fails to state a viable cause of action.[114]

"Unjust enrichment, itself, is not an independent cause of action."[115]  "[T]he availability of an

adequate legal remedy may render equitable claims like unjust enrichment unavailable."[116]

Plaintiffs' unjust enrichment claim is premised on (and duplicative of) her Trademark and Right

---

[110] *See supra* nn. 32-35.

[111] *See Id.* ¶¶ 5-7 and 16.

[112] *See Id.*; ECF Doc. 26, pp. 3-5 ¶¶ 14-17, 19-20, pp 15-17.  The Court may take judicial notice of the Declaration of James Maynes In Support Of Defendants' Opposition To Plaintiffs' Reply Brief In Support Of Request For A Temporary Restraining Order as a court record.

[113] *See* ECF Doc. 25 ¶ 15.

[114] *See* ECF Doc. 1 ¶¶ 173-175.

[115] *R.M. Dudley Const. Co., Inc. v. Dawson,* 258 S.W.3d 694, 703 (Tex. App. 2008).

[116] *Id.* at 704.

of Publicity Claims,[117] and thus legal remedies are available.  Accordingly, Plaintiffs' unjust enrichment claim should be dismissed.

### 9.     Plaintiffs' Parasitic Claims Also Fail To State A Claim.

Plaintiffs allege a host of parasitic claims (*i.e.*, claims that are dependent on the existence of another, viable claim).  Plaintiffs assert a claim for a suit for an accounting (Count 16),[118] but are not entitled to an accounting because, as set forth in Sections III.C.1 and III.C.3-4, Plaintiffs have failed to allege a contractual or fiduciary relationship that entitles them to such an accounting.[119]  The Court should dismiss the claim (Count 16).  Plaintiffs' claim for misappropriation of income and royalties claim also is not viable (Count 9).[120]  The claim does not exist under Texas law.  Rather, Plaintiffs' claim to entitlement of certain incomes appears predicated on Plaintiffs' breach of fiduciary duty claim and, potentially, fraud claim.  Those claims fail (*see* Sections III.C.1-2), therefore, Plaintiffs' misappropriation of income and royalties claim also fails.  The Court should dismiss the claim (Count 9).

Plaintiffs' civil conspiracy claim is also not viable (Count 12).[121]  The elements of civil conspiracy are:  (1) "two or more persons;" (2) "an object to be accomplished"; (3) "a meeting of the minds on the object or course of action;" (4) "one or more unlawful, overt acts;" and (5) "damages as a proximate result."[122]  As a threshold matter, Plaintiffs rely only upon conclusory

---

[117] *See* ECF Doc. 1 ¶ 174.

[118] *See* ECF Doc. 1 ¶¶ 176-177.

[119] *See T.F.W. Mgmt., Inc. v. Westwood Shores Property Owners Ass'n,* 79 S.W. 3d 712, 717 (Tex. App. 2002).

[120] *See* ECF Doc. 1 ¶¶ 131-141.

[121] *MVS Intern. Corp. v. Intern. Advertising Solutions, LLC,* 545 S.W.3d 180, 196 (Tex. App. 2017).

[122] *Tri. V. J.T.T.,* 162 S.W.3d 552, 556 (Tex. 2005).

assertions which are insufficient to support their claim.[123]  Further, the purported unlawful acts

that serve as the predicate for this claim are:  (1) terminating Roper from the group (*i.e.,* the

contract related claims (*see* Sections III.C.3-5)); (2) Plaintiffs' claim Spinderella is a partner

entitled to past, present, and future Salt N Pepa income (*i.e.,* the breach of fiduciary duty and

misappropriation of income and royalties claims (*see* Section III.C.1)); (3) Plaintiffs' Trademark

and Right of Publicity Claims (*see* Sections III.C.7-8); and (4) Plaintiffs' copyright claim.[124]

Accordingly, the Court should dismiss Count 12.

Finally, Plaintiffs' unfair competition claim (Count 14) fails because it is explicitly

dependent on the aforementioned claims and Plaintiffs do not allege any factual contention to

support the claim.[125]  Accordingly, the Court should dismiss Count 14.

## IV.
## CONCLUSION

For all the foregoing reasons, Defendants request that the Court:  (1) grant the Motion;

(2) dismiss Plaintiffs' claims; and (3) grant Defendants all other relief to which they may be

entitled.

---

[123] *See* ECF Doc. 1 ¶¶ 173-175.

[124] *See* ECF Doc. 1 ¶ 158.  With respect to Plaintiffs' copyright claim, there could be no conspiracy to deprive her of royalties because the right she relies on was not enacted until October 11, 2018.  *See* Footnote 62.  Plaintiffs allege that she joined SoundExchange in 2018 to collect her share of royalties and, therefore, there would not have been a purported deprivation of royalties after she made her claim.  *See* ECF Doc. 1 ¶ 103.  Further, insofar as Plaintiffs rely on their allegations of fraud to support their conspiracy claims, Plaintiffs fraud claim fails for the reasons set forth in Section III.C.2; *see also Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 665 (S.D. Tex. 2016) ("Importantly, the pleading standards of Rule 9(b) also apply to pleading a state-law claim of conspiracy to commit fraud.").

[125] *See Id.* ¶¶ 170-172.

Dated:  August 5, 2019                    Respectfully submitted,

                                          FOX ROTHSCHILD LLP


                                          /s/  C. Dunham Biles
                                          C. Dunham Biles
                                          State Bar No. 24042407
                                          David Grant Crooks
                                          State Bar No. 24028168
                                          Two Lincoln Centre
                                          5420 LBJ Freeway, Suite 1200
                                          Dallas, Texas 75240
                                          Tel:  972-991-0889
                                          Fax:  972-404-0516
                                          **cbiles@foxrothschild.com**
                                          **dcrooks@foxrothschild.com**
                                          **ATTORNEYS FOR DEFENDANTS**


## CERTIFICATE OF SERVICE

The undersigned certifies that on August 5, 2019, Defendants served a true and correct copy of the foregoing on all known counsel of record via the Northern District of Texas CM/ECF filing system.


                                          /s/  C. Dunham Biles
                                          C. Dunham Biles