IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEIDRA M. ROPER a/k/a "Spinderella", and SPINDERELLA ENTERTAINMENT, LLC<br><br>        Plaintiffs,<br><br>v.<br><br>CHERYL JAMES-WRAY A/K/A CHERYL JAMES, SANDRA DENTON, JAMES MAYNES, AND S & C PRODUCTIONS, INC.<br><br>        Defendants. | Civil Action No. 3:19-CV-01651-S<br><br>*JURY TRIAL DEMANDED* |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Deidra M. Roper a/k/a "Spinderella" ("**Spinderella**") and Spinderella Entertainment, LLC ("**Spinderella LLC**") (collectively, "**Plaintiffs**"), by and through undersigned counsel, hereby file this *First Amended Complaint* against Cheryl James-Wray a/k/a Cheryl James ("**James**"), Sandra Denton ("**Denton**"), James Maynes ("**Maynes**"), and S & C Productions, Inc. ("**S&C**") (collectively, "**Defendants**"), and would respectfully show this Court the following:

### I.    INTRODUCTION

1.      The factual background of this case began nearly 30 years ago in the late 1980s when the musical group "Salt-N-Pepa" rose to fame with hits like "Push It" and "Whatta Man". Still in high school, Spinderella joined James and Denton in 1987 to become the third member in "Salt-N-Pepa". For over 30 years, Spinderella performed as the feature deejay during concerts with James and Denton as "Salt-N-Pepa" and contributed to "Salt-N-Pepa's" famous audio recordings with her vocal performances.

2.      Since the mid to late 2000s, James, Denton, and Spinderella delivered nostalgia-oriented concerts to fans and audiences nationwide. However, on January 4, 2019, Defendants terminated Spinderella from all future activity and involvement in "Salt-N-Pepa". Despite the purported termination, Defendants continued to advertise and use Spinderella's name and likeness to promote concerts, both directly and indirectly. Moreover, Defendants have failed to pay Spinderella for past performances, merchandise sales, and various streams of artist and performer income.

3.      Plaintiffs bring this lawsuit to enjoin Defendants from using Plaintiffs' trademark, name, image, and likeness in promotion with performances and merchandise relating to "Salt-N-Pepa" and to recover the sums of monies duly owed to her from various sources of "Salt-N-Pepa's" income, including, record sales, merchandise sales and royalties as a performer.

## II.    PARTIES

4.      Plaintiff Deidra M. Roper a/k/a "Spinderella" ("**Spinderella**") is an individual and a resident of the State of Texas. Spinderella has been a resident of Texas since 2010.

5.      Plaintiff Spinderella Entertainment, LLC ("**Spinderella LLC")** is a limited liability company organized under the laws of the State of Texas.

6.      Defendant Cheryl James-Wray a/k/a Cheryl James ("**James**") is an individual and a resident of New York. Defendant James has already been served with process and made an appearance in this suit through her counsel.

7.      Defendant Sandra Denton ("**Denton**") is an individual and a resident of Nevada. Defendant Denton has already been served with process and made an appearance in this suit through her counsel.

8.      Defendant James Maynes ("**Maynes**") is an individual and a resident of New York. Defendant Maynes has already been served with process and made an appearance this suit through his counsel.

9.      Defendant S & C Productions, Inc. ("**S&C**") is a corporation organized under the laws of the State of New York. Defendant S&C has already been served with process and made an appearance in this suit through its counsel.

### III.      JURISDICTION AND VENUE

10.      This Court has subject-matter jurisdiction over the matters raised by this lawsuit pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121 because this action arises under the Trademark Act of 1946, as amended. Moreover, this Court has subject-matter jurisdiction over the matters raised by this lawsuit pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship of the parties. Additionally, this Court also has supplemental jurisdiction over Plaintiffs' claims that arise under state law because such claims are integrally related to Plaintiffs' federal claims and arise from a common nucleus of operative facts.

11.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) for the following reasons: (a) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the State of Texas, and (b) Defendants have committed substantial acts of infringement in and throughout the State of Texas at various physical locations, including, Dallas, Texas, via the internet, (inclusive of Texas), thereby making the Defendants subject to personal jurisdiction of the Court.

### IV.      FACTS AND PROCEDURAL BACKGROUND

12.      Today, Spinderella is recognized around the world for giving audiences live musical performances and musical recordings displaying her deejay skills and vocals. Spinderella

has also enjoyed success through her professional services as a radio show host and an entrepreneur. Spinderella has performed and is recognized by her federally registered trademark— "Spinderella" that is held by Spinderella LLC. Spinderella's rise to fame and international recognition began over 30 years ago in New York with a musical trio.

**A.  The Rise of the Iconic Trio—"Salt-N-Pepa".**

13.     During the mid-1980s, music producer Herby "Luvbug" Azor sought to market an all-female hip-hop group patterned after the then legendary all-male rap group known as "Run DMC". Still in high school, Spinderella answered the call and auditioned for membership in the up-and-coming all-female hip-hop group based in New York City. Spinderella was accepted and, along with James and Denton, became the third member in the group known as "Salt-N-Pepa".

14.     Throughout the 1980s and 1990s, Spinderella appeared with James and Denton in studio recordings and provided vocal studio performances for hit singles such as "Whatta Man", "Let's Talk About Sex", the Grammy-awarding winning song "None of Your Business", and other recordings. Spinderella also performed alongside James and Denton during concert performances and equally participated to ensure the Trio's success. Together as "Salt-N-Pepa", Spinderella, James, and Denton have sold millions of records and have won a Grammy and multiple MTV Video Music Awards—forever leaving their mark on the music entertainment industry.

**B.  Relationship of Trust and Confidence Builds.**

15.     Sometime in the early 1990s, Herby "Luvbug" Azor discontinued management of the now-famous Trio and, after several interim managers, Maynes began acting as the manager for "Salt-N-Pepa", while James and Denton took a more active role in directing the Trio's business. In managing the Trio on a day-to-day basis, Maynes was Spinderella's direct contact.

16. Maynes informed Spinderella of her studio recording time, prospective deals, travel schedule, rehearsal dates, and performance dates. Similarly, James and Denton became more directly involved in negotiating business opportunities and making managerial decisions for the benefit of the Trio, including entering into business opportunities, setting rehearsal timing, and establishing the set-list for performances.

17. As Maynes, James, and Denton became more directly involved in the overall operation of "Salt-N-Pepa", including the collection of income from numerous sources, division of income to Spinderella (typically through Spinderella's bank in Texas), and informing Spinderella of performance and appearance opportunities, the relationship of trust and confidence between Spinderella and Maynes, James, and Denton grew. Specifically, Spinderella trusted Maynes, Denton, and James because she was excluded from negotiations regarding business deals and never received a copy of any contracts regarding "Salt-N-Pepa", or contract summaries of specific deal points, including gross or net pay for services rendered by the Trio. Forced in the dark regarding business opportunities, Spinderella relied on the statements and honesty of James, Denton, and Maynes with respect to oral representations to Spinderella regarding business deals made on behalf of the Trio and her share of the income.

18. Collectively, Maynes, James, and Denton negotiated deals and performances to include Spinderella and include payment for Spinderella's services. After negotiating the deals, Maynes, James, and Denton would collect the income, then disburse the income owed to Spinderella. As a result, Spinderella continued to trust and rely upon Maynes, James, and Denton.

19. These business dealings continued throughout the relationship between Spinderella and Maynes, James, and Denton, which deepened their relationship of trust and confidence.

**C. Violation of Trust and Confidence.**

20.     The relationship of trust and confidence between Spinderella and Maynes, James, and Denton continued throughout the years. For example, in the early 2000s, Maynes, James, and Denton had ongoing discussions with VH1 for a television show.  Similar to past dealings, Maynes, James, and Denton brought the opportunity to Spinderella and assured Spinderella that she would receive a 1/3 share of the earnings. In the first of many breaches of trust, Maynes, James, and Denton proceeded to negotiate a contract with VH1 and consummate "The Salt N Pepa Show" without Spinderella's knowledge. Spinderella was eventually invited to appear on the show—only as a guest—for minimal compensation.

21.     Another breach of trust started in 1999, when Defendants released an album entitled "The Best of Salt N Pepa" that compiled the top hits of "Salt-N-Pepa". Maynes, James, and Denton failed to inform Spinderella of the released album and Denton only called Spinderella a few years after the release to notify Spinderella that James and Denton were holding $125,000 for Spinderella. To date, James and Denton never paid Spinderella $125,000 or any other sum of money or royalties that was generated from the sale and streaming of "The Best of Salt N Pepa" album.

22.     A more recent example of a violation of trust between Spinderella and Maynes occurred during the Fall of 2018 through the Spring of 2019 when Defendants agreed to a residency at Caesar's Paris Hotel in Las Vegas. Specifically, on or about October 2018, Maynes approached Spinderella about an opportunity to have her own residency to display her deejay skills and earn additional income (the "DJ Residency"). Maynes negotiated to establish the residency for the benefit of Spinderella. Indeed, Maynes acknowledges that he "advocated on behalf of Spinderella to get a Las Vegas Residency." *See* Appendix in Support of Defendants' Response in Opposition to Plaintiffs' Request for a Temporary Restraining Order [Dkt. 24] at SNP-000005. However,

Spinderella later discovered that Maynes' efforts were half-hearted as he concealed information pertaining to the deejay residency from Spinderella and refused to allow Spinderella to aid in negotiations. Maynes portrayed to Spinderella that he negotiated in her best interest when, in fact, he had not.

23.     Ultimately, and still trusting in Maynes, Spinderella arrived on the first day of the advertised DJ Residency in the Fall of 2018. Upon arrival at the venue and being ready to perform, Spinderella was told by the venue operators that, contrary to the advertisements, the DJ Residency had not been scheduled. Maynes later apologized to Spinderella and conceded that he had not completed the specific arrangements for the DJ Residency.

24.     Overall, Maynes, James, and Denton continued to collect the income from performances and merchandise sales, but refused to pay Spinderella her share or provide an accounting regarding the income from merchandise sales. Maynes, James, and Denton knew that that they accepted the responsibility to handle income and failed to account to Spinderella.

**D. Termination of the Relationship of Trust and Confidence.**

25.     Having decided that they no longer wished to include Spinderella in their business dealings, Defendants sent a letter to Spinderella claiming they were terminating her from the Trio effective January 4, 2019. The formal ending of the relationship of trust and confidence came on the heels of Defendants' negotiations with Lifetime Television/A&E Networks to establish a television miniseries regarding the group, "Salt-N-Pepa".

26.     Despite ending the close ties, Defendants continued to use Spinderella's name, brand, and image in promoting various shows. Most notably was during the I Love the 90s Tour. The I Love the 90s Tour was a domestic and international 90s nostalgia-oriented tour that ran from 2015 through 2019. In promotion of the shows, Defendants, in concert with the show promoters,

continued to reference Spinderella as being a part of the show and "Salt-N-Pepa". Indeed, well after Spinderella's termination, the official website for the I Love the 90s Tour mentioned Spinderella by name and included a picture of the Trio as the center focal point of the website.

27.     Another example of infringement occurred during the five shows Defendants performed in Texas. Specifically in Dallas, Texas on May 17, 2019, while performing at the American Airlines Center on the Mix Tape Tour, Defendants, and the concert promoters acting with Defendants, continued to use promotional flyers that depicted James, Denton, and Spinderella as "Salt-N-Pepa". Defendants used those promotion materials despite having terminated Spinderella on January 4, 2019. As a result of the promotion using Spinderella's name, image, or likeness, there was a likelihood of confusion by the fans as to whether Spinderella was a part of the performance. Some fans were actually confused and mistook the female deejay that Defendants hired for Spinderella. Indeed, in one social media post, a fan attended a concert for the Mix Tape Tour in Portland, Oregon on June 2, 2019, and believed that the deejay performing was Spinderella, when she was not. Defendants, and the concert promoters acting in concert with Defendants, had a clear incentive to promote the concert as a performance by the iconic Trio whose music and image dominated the '80s and '90s.

28.     In addition to using Spinderella's name and likeness, Defendants promised to pay Spinderella a 1/3 share of the income generated through meet-and-greets during the I Love the 90s Tour; however, Defendants didn't provide any accounting to Spinderella to confirm that she was indeed receiving her full 1/3 share. Additionally, Defendants failed to provide Spinderella a share of the income generated from merchandise sales, both online and at shows across the United States, including Texas, and internationally, despite (i) Spinderella's work and dedication to building the brand "Salt-N-Pepa" to its now famous recognition and (ii) the merchandise bearing Spinderella's

image and likeness. Specifically, Spinderella, along with James and Denton, performed on stage and posed with fans during meet-and-greets. Spinderella inquired with James if she and Denton were collecting income from the meet-and-greet sessions with fans. James later confirmed to Spinderella that she and Denton were receiving income from the appearance sessions with their fans and promised that the income received would also be divided equally amongst the Trio— Spinderella, James, and Denton. Now, the I Love the 90s Tour is nearly complete and Defendants have not provided any accounting to Spinderella in order to confirm receipt of her 1/3 share in meet-and-greets.

29.     Moreover, despite terminating Spinderella from the group, Defendants continue to use Spinderella's image to sell merchandise through the "official merchandise store" of "Salt-N-Pepa". Defendants allege to have tendered Spinderella's 1/3 share in merchandise sold through MerchDirect in 2018 on July 16, 2019, shortly after the Complaint [Dkt. 1] was filed. However, the accounting from MerchDirect may not include all merchandise sold and therefore Spinderella cannot yet confirm that she received 1/3 receipt of all merchandise sales in 2018. Thus, Defendants failed to provide Spinderella with her 1/3 share for all merchandise sold for all relevant years.

30.     In a final attempt to deprive Spinderella of sums owed to her, Defendants have collected and retained the royalty income for digital performances of "Salt-N-Pepa" recordings derived from SoundExchange from her. Because Spinderella performed on songs with James and Denton under the group name "Salt-N-Pepa", Spinderella is entitled digital performance royalties. Despite knowing those royalties should be shared with Spinderella, Defendants have purposefully kept Spinderella in the dark about the amounts due and owing to her.

31.     Plaintiffs bring this action to protect their brand, image, and likeness from continued misappropriation by Defendants, and those acting in concert with Defendants, and to

collect the sums of monies due and owing to Plaintiffs from merchandise sales, meet-and-greets, and artist performance royalties.

## V.     CLAIMS

**COUNT 1:     Infringement of Registered Trademark & Service Mark – 15 U.S.C. §§ 1114(a) and 1117(a)**

32.     Spinderella LLC re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

33.     Trademark infringement occurs when (1) a plaintiff possesses a legally protectable trademark; and (2) a defendant's use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship. *Streamline Prods. Sys., Inc. v. Streamline Mfg., Inc.* 851 F.3d 440, 450 (5th Cir. 2017).

34.     Spinderella LLC has a federally registered trademark and service mark in "Spinderella".[1]

35.     Defendants, and those acting in concert with Defendants, used Spinderella LLC's federally-registered trademark to promote and sell concert tickets and merchandise. The infringement by Defendants, and those acting in concert with Defendants, has a likelihood to cause confusion as to Spinderella's association with the concert and merchandise. Indeed, such confusion became apparent when fans attended a "Salt-N-Pepa" concert and mistook the female deejay to be Spinderella.

36.     As a result of the infringement, Spinderella LLC seeks injunctive relief and monetary recovery, including, but not limited to, (a) an award to Spinderella LLC measured by Defendants' profits; (b) an award to Spinderella LLC measured by the actual business damages

---

[1] US Reg. No. 5164095.

and losses caused by the infringement; (c) an award to Spinderella measured by Spinderella LLC's own loss of profit caused by the infringement; (d) an award to Spinderella LLC of punitive damages in additional to actual damages; and/or (e) an award to Spinderella LLC for reasonable attorneys' fees incurred in prosecuting this infringement.

**COUNT 2:     False Designation of Origin – 15 U.S.C. § 1125(a)**

37.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

38.     A violation of 15 U.S.C. § 1125(a)(1) occurs when (a) the defendant made a false statement of fact about its product in a commercial advertisement; (b) the statement actually deceived or had a tendency to deceive a substantial segment of its audience; (c) the deception was material; (d) the defendant caused the false statement to enter interstate commerce; and (e) the plaintiff has been or is likely to be injured as a result. *Decorative Ctr. of Houston, L.P. v. Direct Response Publ'n, Inc.*, 264 F. Supp.2d 535, 551 (S.D. Tex. 2003).

39.     Defendants caused Spinderella's name, image, and likeness to be used in commercial advertisement promoting certain shows, including shows relating to the I Love the 90s Tour and the Mix Tape Tour. Defendants' use of Spinderella's name, image, and likeness has a tendency to deceive a substantial segment of its audience into believing Spinderella would be performing in the shows, when in fact she was not. Defendants' actions were material as fans were excited to see the famous Trio.

40.     Because of Defendants' actions, Spinderella lost control of her brand and image and is likely to be injured as a result.

41.     As a direct and proximate cause of Defendants' actions, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity.

**COUNT 3:      Trademark Dilution – 15 U.S.C. § 1125(c)**

42.      Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

43.      A violation of Trademark Dilution under 15 U.S.C. § 1125(c) occurs when (1) plaintiff owns a famous and distinctive mark; (2) defendant uses the mark in a manner that dilutes the mark; (3) association between the two marks due to the similarity; and (4) the association between the two marks is likely to impair the distinctiveness of the mark or harm the reputation of the plaintiff's mark. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co*., 671 F.3d 526, 536 (5th Cir. 2012).

44.      Spinderella LLC's mark "Spinderella" or "DJ Spinderella" is a famous mark as it is widely recognized by the general consuming public of the United States as a designation relating to Spinderella. Indeed, Spinderella has performed throughout the Unites States and internationally as "Spinderella" or "DJ Spinderella" for over 30 years.

45.      In promotional flyers and websites, Defendants, and those acting in concert with Defendants, have used Spinderella's mark to promote "Salt-N-Pepa" shows. Because Spinderella is no longer part of the group "Salt-N-Pepa", Defendants', and those acting in concert with Defendants, use of "Spinderella" dilutes the mark. Indeed, Spinderella is no longer touring and performing with James and Denton. As such, the use of her mark related to concert performances by "Salt-N-Pepa" associates Spinderella with the concert that she is not a participant.

46.      Using Spinderella's mark regarding a performance that Spinderella is not a participant in is likely to impair the distinctiveness of Spinderella's mark or harm Spinderella's reputation. Indeed, the impairment of the distinctiveness of Spinderella's mark is seen in a recent exchange with a fan who mistook Spinderella for being present in Albany, New York with James

and Denton. On August 17, 2019, a fan tagged Spinderella and mentioned how great the show in Albany, New York was. Spinderella responded by asking if the fan saw her onstage to which the fan responded with a resounding "Yes! You were there and awesome." Spinderella was not present and did not perform in the August 17 show in Albany, New York.

47.     As a direct and proximate cause of Defendants' actions, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity.

**COUNT 4:     Violation of Featured Performer Rights – 17 U.S.C. § 114(g)(2)(D)**

48.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

49.     As formerly part of the famous Trio—"Salt-N-Pepa"—Spinderella performed on numerous "Salt-N-Pepa" audio and audio-visual recordings, including "Whatta Man" and "Let's Talk About Sex". As a result of Spinderella's extensive recording activities with James and Denton under "Salt-N-Pepa", Spinderella is a featured performer and as such is entitled to certain royalties as authorized under 17 U.S.C. § 114(g)(2)(D).

50.     Spinderella submitted her claim to SoundExchange to receive her royalties as a featured performer. However, James and Denton had claimed 100% of the "Salt-N-Pepa" royalties, thereby excluding Spinderella.

51.     Spinderella seeks the royalties owed to her as a featured performer for all of the digital recordings, audio, and audio-visual recordings to which she is entitled to as a featured performer.

**COUNT 5:     Breach of Contract**

52.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

53.     Spinderella and Maynes, individually and on behalf of James, Denton, and S&C, agreed that (a) Spinderella would (i) perform with James and Denton in the Mix Tape Tour featuring "Salt-N-Pepa" and the New Kids on the Block, (ii) participate in promotion events such as photo-shoots prior to the start date of the Mix Tape Tour, (iii) receive $4,000 per show, and (iv) perform approximately 50 shows during the life of the Mix Tape Tour.

54.     The agreement between Spinderella and Maynes, individually and on behalf of James, Denton, and S&C, is a valid, enforceable contract.

55.     Spinderella is a party to the contract and is thus a proper party to sue for its breach.

56.     Spinderella performed her contractual obligations under the contract.

57.     Maynes, individually and on behalf of James, Denton, and S&C, did not comply with and breached the contract.

58.     As a direct and proximate cause of Maynes' breach, individually and on behalf of James, Denton, and S&C, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity, including but not limited to, expectancy damages and consequential and direct damages.

**COUNT 6:     Promissory Estoppel**

59.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

60.     On or about the Fall of 2000, Denton promised Spinderella that she and James had $125,000 for Spinderella.

61.     It was foreseeable that Spinderella would rely on the promise to receive $125,000.

62.     Spinderella relied on Denton's promise to her detriment.

63.     As a direct and proximate cause of Denton's promise, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity, including disgorgement, reliance damages, and/or special damages.

**COUNT 7:     Misappropriation of Spinderella's Name and Likeness**

64.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

65.     Misappropriation of name and likeness occurs when (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *Henley v. Dillard Dep't Stores,* 46 F.Supp.2d 587, 590 (N.D. Tex. 1999) (citing *Matthews v. Wozencraft,* 15 F.3d 432, 437 (5th Cir. 1999).

66.     Defendants, and those acting in concert with Defendants, appropriated Spinderella's name and likeness while promoting concert shows and merchandise for the value associated with presenting the iconic Trio that rose to fame in the late 80s and early 90s consisting of James, Denton, and Spinderella. Spinderella and the name "Spinderella" is well known and carries value in the promotion of products. Defendants received the benefit of the reputation, prestige, and value added by using "Spinderella".

67.     As a direct and proximate cause of Defendants' misappropriation, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity, including disgorgement.

**COUNT 8:     Conversion**

68.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

69.     At all relevant times, Plaintiffs owned, possessed, and had the right to immediate possession of her personal property, including royalties owed to Spinderella as a featured performer and a share of merchandise sales.

70.     Defendants wrongfully exercised dominion or control over certain personal property of Spinderella, including, but not limited to, converting funds owed to Spinderella for their own personal benefit.

71.     As a direct and proximate cause of Defendants' conversion, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity, including consequential, direct, or special damages.

**COUNT 9:     Breach of Fiduciary Duty**

72.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

73.     Because Spinderella placed trust and confidence in James, Denton, and Maynes, James, Denton, and Maynes owed Spinderella a fiduciary duty, including the duty to be fair and equitable to Spinderella in transactions; the duty to make reasonable use of the confidence that Spinderella placed in James, Denton, and Maynes; and the duty to act in the utmost good faith and exercise the most scrupulous honesty towards Spinderella. Throughout their dealings with third parties, James, Denton, and Maynes each negotiated terms for the benefit of Spinderella and relayed those benefits to Spinderella. In this case, the relationship of trust and confidence began when Spinderella joined the group "Salt-N-Pepa" while still in high school and became the third member of the group, and continued through the end of Spinderella's termination on January 4, 2019.

74.     James, Denton, and Maynes, at different times, breached their fiduciary duty owed to Spinderella. The breaches include, but are not limited to, the following:

    a.   Collecting, retaining, and converting royalties that were payable to Spinderella;

    b.   Collecting, retaining, and converting income from merchandise sales;

    c.   Failing to account and pay to Spinderella her share from meet-and-greets; and

    d.   Failing to act in good faith when negotiating professional work opportunities.

75.     As a direct and proximate cause of James, Denton, and Maynes' breaches, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity.

**COUNT 10:   Fraudulent Misrepresentation**

76.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

77.     On or about the Fall of 2000, Denton represented to Spinderella that she and James had $125,000 that was owed to Spinderella.

78.     In September 2018, Maynes represented to Spinderella that she would receive a deejay residency in Las Vegas and that he was negotiating on her behalf and in her best interest about establishing a deejay residency in Las Vegas.

79.     On or before July 2017, James represented to Spinderella that she would receive a 1/3 share of the income generated from the meet-and-greet and after-parties during the I Love the 90s Tour.

80.     Those representations were false, and James, Denton, and Maynes knew the representations were false or made them recklessly without knowledge of their truth.

81.     James, Denton, and Maynes made the representations with the intent that Spinderella act on them by continuing to perform with the group and with the intent to deceive Spinderella, who did, in fact, justifiably rely on the representation by agreeing to and continuing to perform with the group.

82.     As a direct and proximate cause of James, Denton, and Maynes' fraudulent misrepresentations, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity, including but not limited to, disgorgement, an accounting, and restitution.

**COUNT 11:   Fraudulent Inducement**

83.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

84.     In late December 2018, Maynes represented to Spinderella that she would receive increased per-performance payment of $4,000 and be included on approximately 50 live performances with James and Denton during the Mix Tape Tour that was scheduled to commence in May of 2019.

85.     The representation was false, and Maynes knew the representation was false or made it recklessly without knowledge of the truth because Maynes knew that Defendants intended to terminate Spinderella before the start of the Mix Tape Tour.

86.     Maynes made the representations with the intent that Spinderella act on them by agreeing to participate in photo-shoots and help with completing the promotional materials for the upcoming Mix Tape Tour with the intent to deceive Spinderella, who did, in fact, justifiably rely on the representation by declining alternate professional work opportunities, minimizing her

pursuit of independent professional engagements and business activities, and participating in the efforts to support the Mix Tape Tour.

87.     As a direct and proximate cause of Maynes' fraudulent inducement, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity.

## COUNT 12:   Civil Conspiracy

88.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

89.     Defendants, in concert with different venue and show promoters, conspired to maximize revenue through ticket and merchandise sales by infringing upon Spinderella's name, image, and likeness. Defendants, and those acting in concert with Defendants, used Spinderella's name, image, and likeness on promotional flyers and websites to advertise the concerts and merchandise.

90.     As a direct and proximate cause of the actions of the Defendants and co-conspirators, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity.

## COUNT 13:   Tortious Interference with Current & Prospective Business Relationships

91.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

92.     On or about October of 2018, Spinderella became aware of a reasonable opportunity to enter into a business relationship establishing her own DJ Residency at the Paris Hotel in Las Vegas. The DJ Residency would involve Spinderella performing at post-show receptions and events held in the Paris Hotel  two nights per week.

93.     Maynes managed the negotiations for the DJ Residency on behalf of Spinderella. Maynes interfered with the opportunity to have a DJ Residency by placing other's needs before Spinderella's. Maynes knew the interference was substantially certain to occur as a result of his conduct.

94.     Maynes' conduct was independently tortious and unlawful as Maynes was not acting for the benefit of Spinderella, thereby breaching his fiduciary duty to Spinderella.

95.     As a direct and proximate cause of Maynes' actions, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity.

**COUNT 14:   Unfair Competition**

96.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

97.     Defendants, and those acting in concert with Defendants, used Spinderella LLC's federally-registered trademark to promote and sell concert tickets and merchandise. The infringement by Defendants, and those acting in concert with Defendants, has a likelihood to cause confusion as to Spinderella's association with the concert and merchandise. Indeed, such confusion became apparent when fans attended a "Salt-N-Pepa" concert and mistook the female deejay to be Spinderella.

98.     As a direct and proximate cause of Defendants' actions, Spinderella was injured. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity.

**COUNT 15:   Unjust Enrichment**

99.     Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

100.    Based on principles of justice, equity, and good conscience, Defendants were unjustly enriched by the funds they received, directly or indirectly, relating to services rendered by Spinderella or royalties owed to Spinderella. For example, Defendants have retained $125,000 that Denton agreed was owed to Spinderella. Further, Defendants have unjustly retained the royalties owed to Spinderella as a featured performer on certain songs performed with James and Denton. It would be fundamentally unfair to allow Defendants to retain any funds improperly obtained at the detriment of Spinderella.

101.    Spinderella therefore seeks full and complete disgorgement, restitution, and/or rescission of all benefits deriving, directly or indirectly, from Defendants' unjust position.

102.    As a direct and proximate cause of Defendants' actions, Spinderella was injured and Defendants benefitted. Spinderella therefore seeks all remedies to which she may be entitled at law or in equity, including but not limited to, disgorgement, an accounting, restitution, and/or consequential and direct damages.

**COUNT 16:   Suit for Accounting**

103.    Spinderella re-alleges and incorporates herein by reference the allegations set forth in the paragraphs above.

104.    In order to assess the complete amount owing to Spinderella, Spinderella demands that Defendants provide an accounting to Spinderella and turn over, or otherwise make available for inspection, all information in Defendants' possession, custody, or control that directly or indirectly relates directly and indirectly (through contractual and/or business relationships with third parties) to Defendants' performances, merchandise, appearances, media publicity, advertisements, and commercial activities as "Salt-N-Pepa". Such information includes, but is not limited to, contracts, receipts, disbursements, bank statements, income and royalty accountings,

account receivables, and all other documents reflecting the financial transactions involving Defendants related to, or for the benefit of, "Salt-N-Pepa".

## VI.    CONDITIONS PRECEDENT

105.    To the extent applicable and relevant, all conditions precedent have been satisfied or excused.

## VII.    ATTORNEYS' FEES

106.    Plaintiffs re-allege and incorporates herein by reference the allegations set forth in the paragraphs above.

107.    Spinderella seeks to recover their attorneys' fees and costs to the fullest extent allowed by law, including (without limitation) pursuant to Sections 37.009 and 38.001 of the Texas Civil Practice & Remedies Code and 15 U.S.C. §§ 505 and 1117.

## VIII.    REQUEST FOR DECLARATORY JUDGMENT

108.    Plaintiffs re-allege and incorporates herein by reference the allegations set forth in the paragraphs above.

109.    Actual controversies exist between Plaintiffs and the Defendants.

110.    Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S. Code § 2201, Fed. R. Civ. P. 57, and Bus. & Com. Code § 17.50(b)(4), Plaintiffs request that this Court issue a declaratory judgment declaring:

   a.    Defendants used Spinderella LLC's federally-registered trademark and service mark and the use created a likelihood of confusion, and therefore Defendants violated 15 U.S.C. § 1114(a);

   b.    Defendants used Spinderella's name, image, or likeness in a commercial advertisement that substantially and materially deceived or had the tendency to

deceive a substantial segment of its audience. As a result of Defendants' use in commerce, Spinderella was or was likely to be injured, and therefore Defendants violated 15 U.S.C. § 1125(a);

c.  Defendants' use of Spinderella LLC's federally registered trademark diluted Plaintiffs' mark and harmed the reputation of Plaintiffs' mark, and therefore Defendants violated 15 U.S.C. § 1125(c);

d.  Spinderella is owed royalties on all recordings of which Spinderella is a featured performer under 17 U.S.C. § 114(g)(2)(D);

e.  Defendants misappropriated Spinderella's name and likeness;

f.  Defendants converted money owed to Spinderella;

g.  Defendants breached their fiduciary duty owed to Spinderella;

h.  Defendants made fraudulent misrepresentation to Spinderella that Spinderella relied on to her detriment;

i.  Defendants fraudulently induced Spinderella and Spinderella was harmed as a result of the fraudulent inducement;

j.  Defendants conspired with third-parties to use Spinderella LLC's federally registered trademark;

k.  Maynes tortuously interfered with Spinderella's prospective business relationships that injured Spinderella;

l.  Defendants engaged in unfair competition by using Spinderella LLC's federally registered trademark to promote and sell concert tickets and merchandise that had a likelihood to cause confusion as to Spinderella's association with the concert and merchandise; and

PLAINTIFFS' FIRST AMENDED COMPLAINT                                    Page 23 of 26
526650.000002 22637720.7

      m.  Defendants were unjustly enriched retaining a benefit and money owed to

Spinderella.

## IX.    REQUEST FOR INJUNCTIVE RELIEF

111.    Based on the facts set forth in this Amended Complaint, Spinderella makes the

following application for a permanent injunction:

112.    Plaintiffs re-allege and incorporates herein by reference the allegations set forth in

the paragraphs above.

113.    By using Plaintiffs' trademark, image, and likeness, Defendants violated Plaintiffs'

right to control her mark and brand. Defendants' actions threaten Plaintiffs' mark, and threaten to

irreparably damage Plaintiffs' reputation.

114.    Plaintiffs will suffer irreparable harm for which no adequate remedy at law exists

if Defendants, and anyone formerly, currently, or in the future acting in concert with Defendants,

are not enjoined from continuing their current course of conduct. There is also a high risk that

Defendants, and anyone formerly, currently, or in the future acting in concert with Defendants,

will continue to infringe upon Plaintiffs' trademark and continue their violative acts if they are not

enjoined.

115.    Plaintiffs are likely to prevail on the merits of this case and receive the full amount

of their claims for damages, equitable relief, attorneys' fees, and costs of court.

116.    Defendants', and anyone formerly, currently, or in the future acting in concert with

Defendants, actions will cause Spinderella immediate and irreparable harm, for which there is no

adequate remedy at law, unless a permanent injunction as prayed for below is granted.

117.    Accordingly, Plaintiffs request that this Court issue an order granting a permanent

injunction.

118.     The threatened injury to Spinderella outweighs any possible damage an injunction might cause Defendants.

## X.     JURY DEMAND

119.     Plaintiffs hereby demand a trial by jury on all claims so triable.

## XI.     REQUEST FOR RELIEF

THEREFORE, Plaintiffs request and pray that the Court enter:

(a)  a permanent injunction (1) enjoining Defendants, and anyone formerly, currently, or in the future acting in concert with Defendants, from using Spinderella's federally registered trademark or image and likeness; (2) requiring Defendants to provide, or otherwise make available to Spinderella, all documents and information necessary to conduct an accurate accounting of Spinderella's share of merchandise and royalties owed as a featured performer; and (3) provide for a full and complete account of Spinderella's share of merchandise and royalties owed as a featured performer.

(b)  a declaratory judgment as described in paragraph 89;

(c)  a judgment awarding Spinderella all remedies to which Spinderella may be entitled at law or in equity, including but not limited to disgorgement, the imposition of a constructive trust on all benefits or money received that is owed to Spinderella including her share of merchandise sales and royalties owed as a featured performer; an accounting; restitution; and/or actual and consequential damage;

(d)  a judgment requiring Defendants to convey to Spinderella all monies, including her share of merchandise sales and royalties owed as a featured performer, which Defendants wrongfully diverted from Spinderella;

(e)  a judgment awarding reasonable and necessary attorneys' fees, court costs, expert witness fees, costs for copies of deposition, and any other recoverable costs or expenses;

(f)  a judgment awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

(g)  a judgment awarding such other and further relief, both at law and in equity, to which Plaintiffs may be justly entitled.

DATED: August 26, 2019

Respectfully Submitted,

**THOMPSON & KNIGHT LLP**

/s/ *Paul K. Stafford*
Paul K. Stafford
State Bar No. 00791716
paul.stafford@tklaw.com

Sydne K. Collier
State Bar No. 24089017
sydne.collier@tklaw.com
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:      214-969-1106
Facsimile:       214-999-1500

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served electronically though ECF on all counsel of record.

*/s/* Paul K. Stafford
Paul K. Stafford

STATE OF TEXAS     §
                           §                **VERIFICATION**
COUNTY OF DALLAS   §

     I, Deidra M. Roper, the named Plaintiff, am over 18 years of age, of sound mind, and have never been convicted of a felony or crime of moral turpitude in any of the United States. I hereby verify and declare under penalty of perjury that I have read the foregoing *Plaintiffs' First Amended Complaint* (the "Verified First Amended Complaint") and know the contents thereof, and that the factual statements contained in the Verified First Amended Complaint are true to my own knowledge.

     I hereby declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

     Executed on this 26th day of August 2019.

Deidra M. Roper

SUBSCRIBED AND SWORN TO BEFORE ME on this the 26th day of August, 2019.

Notary Public in and for the
State of Texas

My commission expires:
August 03, 2023



JOE HERNANDEZ
Notary ID #5008243
My Commission Expires
August 3, 2023